UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                          :

HOI MING MICHAEL HO, *et al.*,
                                          :           **ECF Case**

      Plaintiffs,
                                          :           **Civil Action No.: 1:10-cv-07233-**

      v.
                                          :           **GBD**

DUOYUAN GLOBAL WATER, INC., *et al.*,
                                          :

      Defendants.

-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## GRANT THORNTON INTERNATIONAL LTD'S MOTION TO DISMISS

 

WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, New York 10019

Attorneys for Defendant
Grant Thornton International Ltd

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

FACTS ...........................................................................................................................2

ARGUMENT ................................................................................................................5

I.      THE COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM. ...........................5

        A.      The Complaint Does Not Identify Any Misstatement By GTIL. ...........................6

        B.      The Complaint Does Not Allege Scienter As To GTIL. ......................................12

II.     THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM AGAINST
        GTIL. ................................................................................................................13

CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995)................................................................................9

*Adair v. Kaye Kotts Assocs., Inc.*,
  No. 97 CIV. 3375, 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) ....................................14, 15

*In re Asia Pulp & Paper Sec. Litig.*,
  293 F. Supp. 2d 391 (S.D.N.Y. 2003)..........................................................10, 11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)............................................................................2, 3

*In re Bausch & Lomb, Inc. Sec. Litig.*,
  592 F. Supp. 2d 323 (W.D.N.Y. 2008) .............................................................13

*In re Carter-Wallace, Inc. Sec. Litig.*,
  220 F.3d 36 (2d Cir. 2000).............................................................................12

*In re Celestica Inc. Sec. Litig.*,
  No. 07 CV 312, 2010 WL 4159587 (S.D.N.Y. Oct. 14, 2010)...............................................9

*Central Bank of Denver v. Ernst & Young LLP*,
  511 U.S. 164 (1994)........................................................................................6

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996).........................................................................12, 13

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ...........................................................................12

*In re Elan Corp. Sec. Litig.*,
  No. 02 Civ. 865, 2004 WL 1305845 (S.D.N.Y. May 18, 2004).....................................14, 15

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)........................................................................................12

*Greene v. WCI Holdings Corp.*,
  956 F. Supp. 509 (S.D.N.Y. 1997) ...................................................................15

*Glickman v. Alexander & Alexander Servs., Inc.*,
  No. 93 Civ. 7594, 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996) ..........................................12, 13

*Higginbotham v. Baxter Int'l., Inc.*,
  495 F.3d 753 (7th Cir. 2007) ...........................................................................13

*Hinerfeld v. United Auto. Grp.*,
    No. 97 Civ. 3533, 1998 WL 397852 (S.D.N.Y. July 15, 1998) ...............................15

*Janus Capital Grp. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) ................................................................................... *passim*

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
    No. 10–0712–cv, 2011 WL 1778726 (2d Cir. May 11, 2011) .....................5, 13, 14

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
    No. 03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004)....................2, 10, 11

*In re Optimal U.S. Litig.*,
    No. 10 Civ. 4095, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ...............................6

*Pacific Inv. Mgmt. v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010).........................................................................................9

*In re Parmalat Sec. Litig.*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005).................................................................11, 12

*In re PXRE Grp., Ltd. Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)......................................................................12

*In re Refco, Inc. Sec. Litig.*,
    No. 05 Civ. 8628, 2008 WL 3843343 (S.D.N.Y. Aug. 14, 2008) .....................14, 15

*In re Refco Mkts., Ltd. Brokerage Customer Sec. Litig.*,
    586 F. Supp. 2d 172 (S.D.N.Y. 2008).........................................................................9

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)...........................................................................................5

*South Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009).........................................................................................12

*Star Energy Corp. v. RSM Top-Audit*,
    No. 08 Civ. 00329, 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008) ...................10, 11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)......................................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................12

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)................................................................................6, 9, 10

**STATUTES AND REGULATIONS**

15 U.S.C. § 77k(a)(1)-(5).................................................................................................5, 14

15 U.S.C. § 77k(b)(3)(C) ..........................................................................................14

15 U.S.C. § 78t(a) ......................................................................................................10

Regulation S-X Rule 1-02(4)(d), 17 C.F.R. Part 210.1-02(4)(d)....................................8

Regulation S-X Rule 3-01, 17 C.F.R. Part 210.3-01 ...................................................8

Defendant Grant Thornton International Ltd respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' corrected amended complaint.

## PRELIMINARY STATEMENT

To the extent directed against defendant Grant Thornton International Ltd ("GTIL"), the complaint targets a discrete part of Duoyuan Global Water, Inc.'s ("DGW") SEC filings – the audit reports on DGW's financial statements. Alleging that those audit reports were false, the complaint seeks to hold GTIL accountable for supposed failures to detect alleged discrepancies behind the reported numbers. Among the defendants, GTIL is thus grouped in with "the outside auditors who issued opinion letters in connection with DGW's financial statements."

There are a number of problems with this contention, but on this motion we will focus on one. If plaintiffs intended to sue the auditors of DGW's financial statements, they have sued the wrong entity. GTIL did not audit DGW's financial statements. GTIL did not issue audit reports on DGW's financial statements. GTIL is not even *licensed* to do audits or issue audit reports. In fact, GTIL has no clients and performs no client services whatsoever.

The complaint's apparent confusion as to who did what has actually been a recurrent theme throughout the unfortunate history of the pleadings of this case. In their first complaint, plaintiffs did not sue GTIL at all. Then, in an "amended complaint," plaintiffs included among the auditor defendants "Grant Thornton International," which they apparently came to recognize as a mistake. Plaintiffs then apparently sought to add GTIL through the handwritten insertion of the word "Limited" in the caption box of the amended complaint that ended up getting served on GTIL. Now, plaintiffs have filed a "corrected" amended complaint in which the previously-handwritten insertion of "Limited" is typed.

But, however they revise their caption box, plaintiffs can still state no claim against GTIL. Numerous cases, more than a half dozen in the Southern District of New York alone, have explained in painstaking detail the law regarding international accounting firm organizations. The key holding of each is that a non-practicing umbrella organization comprised of independent accounting firms is a legally separate entity that is not liable for the work of the individual member firms that actually issue audit reports. In fact, it was this very Court that helped establish the intellectual foundation for this judicial acknowledgment, when the Court held that, "Member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other members simply by virtue of using the same brand name." *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) (Daniels, J.). Five months ago, the United States Supreme Court handed down its decision in *Janus Capital Group v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011), which held that, among such legally separate but affiliated entities, only the legal entity that "makes" a misleading statement can be liable under section 10(b). While *Janus* did not explicitly address the liability of a non-U.S. non-practicing umbrella entity, its holding that securities claims may only be stated against the entity that "makes" a false statement precludes a claim against an entity, such as GTIL, that performed no services, issued no audit reports, and accordingly did not "make" any of the alleged statements at all.

## FACTS

GTIL is a private company limited by guarantee incorporated in England and Wales.[1] Based in London, it serves as the umbrella entity for the "Grant Thornton" organization

---

[1] November 22, 2011 Declaration of Michael R. Young ("Young Decl.") Ex. 2 (GTIL's website). The complaint refers explicitly to GTIL's website and the other materials attached to the Young Declaration. As such, the Court may consider these materials on this motion to dismiss. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on a motion to dismiss, courts "may consider . . .

of independent firms and effectively licenses the Grant Thornton name and logo to the independent practicing "Grant Thornton" firms.[2]  GTIL itself performs no services, has no clients, does not issue audit reports, and is not licensed to do so.[3]

Rather than being provided by GTIL, client services such as audits are separately provided by the independent national firms that constitute member firms within the Grant Thornton organization.[4]  These independent firms are not members of an international partnership, are independently owned and managed, and are not responsible for the services or activities of one another.[5]  Although each may carry either the "Grant Thornton" name or some name similar to it, they are in fact separate, independent legal entities and are not owned, in whole or in part, by GTIL.[6]

Among the independent firms that together comprise the Grant Thornton international organization was the member firm based in Hong Kong.  That firm was legally named "Grant Thornton" (the name used by most member firms) during the relevant time period, and we will here refer to it as "Grant Thornton Hong Kong."  It was Grant Thornton Hong Kong that conducted the audits, and issued the audit reports, that the complaint alleges to have violated

---

statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").

[2]     Young Decl. Ex. 2 (GTIL's website).

[3]     Young Decl. Ex. 2 (GTIL's website).

[4]     Young Decl. Ex. 2 (GTIL's website).

[5]     Young Decl. Ex. 2 (GTIL's website).

[6]     Young Decl. Ex. 2 (GTIL's website).

the securities laws here.[7]  The gist of the complaint is that DGW's 2008 and 2009 financial

statements – one or both of which were included in registration statements for company share

offerings and in an annual report to investors – misstated DGW's "revenues, operating income,

and net income, in violation of GAAP rules."[8]  The basis for this allegation appears to be a report

issued by short seller Muddy Waters identifying differences between the company's SEC-filed

financial statements and financial statements filed by two DGW subsidiaries with the Chinese

Administration for Industry and Commerce.[9]

       Without getting into the merits of this, the most notable aspect from GTIL's

perspective is that GTIL had nothing to do with it.  The securities filings at issue explicitly

identified "Grant Thornton/Hong Kong" as the issuer of the audit reports on DGW's financial

statements.  Among other things, they provide that "GT Hong Kong was engaged to audit the

Company's financial statements for the financial years ended December 31, 2008 and December

31, 2009."[10]  The audit reports on their face reflect that they were signed by "Grant

Thornton/Hong Kong," and the "Consent of Independent Registered Public Accounting Firm"

required for the reports to be included in the offering documents was also signed by "Grant

Thornton/Hong Kong."[11]  While hardly a model of consistency, the complaint in its more candid

---

[7]     Subsequent to the securities offerings at issue, Grant Thornton Hong Kong changed its name to "JBPB & Co." and left the Grant Thornton network to join the international accounting firm network BDO International Limited.  Young Decl. Ex. 1 (Corrected Amended Complaint) ¶¶ 59-60.

[8]     *See, e.g.*, Young Decl. Ex. 1 (Compl.) ¶ 117.

[9]     Young Decl. Ex. 1 (Compl.) ¶¶ 25, 77, 90.

[10]    Young Decl. Ex. 3 (Duoyuan Global Water Inc., Report of Foreign Private Issuer (Form 6-K) (Dec. 27, 2010)).

[11]    Young Decl. Ex. 1 (Compl.) ¶¶ 202, 203; Young Decl. Ex. 4 (Duoyuan Global Water Inc., Annual Report (Form 20-F), at F-1, Ex. 23.1 (June 18, 2010)); Young Decl. Ex. 5 (Duoyuan Global Water Inc., Registration Statement (Form F-1/A), at F-2, Ex. 23.1 (Jan. 20, 2010)); Young Decl. Ex. 6 (Duoyuan Global Water Inc., Registration Statement (Form F-1), at F-2, Ex. 23.1 (June 1, 2009)); Young Decl. Ex. 7 (Duoyuan Global Water Inc., Registration Statement (Form F-1MEF) (June 24, 2009)).

moments acknowledges that, in contrast to Grant Thornton Hong Kong, GTIL "is a world-wide organization of independent registered public accounting firms" – and is not itself an accounting firm licensed anywhere in the world – and that Grant Thornton Hong Kong was the "member firm" that performed the audits at issue here.[12]

## ARGUMENT

The complaint asserts two claims against GTIL, one under section 10(b) of the Securities Exchange Act and the other under section 11 of the Securities Act. To state a claim under section 10(b), a plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996). To state a section 11 claim, a plaintiff must plead that a registration statement contained "an untrue statement of a material fact or omitted to state a material fact required to be stated therein," and that the defendant falls within five "narrowly drawn categories" of persons that can be sued. 15 U.S.C. § 77k(a)(1)-(5); *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, No. 10–0712–cv, 2011 WL 1778726, at *13 (2d Cir. May 11, 2011). As set forth below, the complaint here does not state a claim under either section.[13]

## I.    THE COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM.

The section 10(b) claim fails for two reasons, both following from the fact that GTIL had nothing to do with the DGW financial statement audits at issue here. First, the

---

[12]    Young Decl. Ex. 1 (Compl.) ¶¶ 58-59.

[13]    In addition to the arguments set forth below, the complaint should also be dismissed for the additional reasons set forth in the other defendants' motion to dismiss briefs.

complaint does not identify any misstatement "made" by GTIL.  Second, the complaint does not allege that GTIL acted with scienter.  Each point is addressed in turn.

## A.      The Complaint Does Not Identify Any Misstatement By GTIL.

Section 10(b) liability extends only to those who "make" misstatements.  *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011); *In re Optimal U.S. Litig.*, No. 10 Civ. 4095, 2011 WL 4908745, at *2 (S.D.N.Y. Oct. 14, 2011).  More precisely, a section 10(b) claim can only be pursued against those with "ultimate authority" over a misstatement.  *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011); *see also In re Optimal U.S. Litig.*, 2011 WL 4908745 at *2.  "Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)."  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998); *see also Central Bank of Denver v. Ernst & Young LLP*, 511 U.S. 164, 177-78 (1994).

The landmark case is the Supreme Court's decision earlier this year in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011).  In *Janus*, an investor brought a section 10(b) claim against an investment advisor, Janus Capital Management, based upon alleged misstatements in a prospectus issued by its client, Janus Investment Fund.  131 S. Ct. at 2301.  Janus Capital Management provided "the management and administrative services necessary for the operation" of Janus Investment Fund, the latter having no management or administrative personnel of its own.  *Id.* at 2299.  "[A]ll of the officers of Janus Investment Fund were also officers of" Janus Capital Management.  *Id.* at 2299.  And Janus Capital Management was alleged to have been "significantly involved" in the preparation of the allegedly misleading prospectus; in fact, Janus Capital Management must have been involved since it operated the fund.  *Id.* at 2305.  Accordingly, the investor claimed that any misstatements in the Janus

Investment Fund prospectus were, in substance, misstatements by Janus Capital Management.
*Id.* at 2305.

The Supreme Court rejected the claim.  Focusing on the plain language, the Court explained that Rule 10b-5 makes it unlawful "to make any untrue statement of a material fact" in connection with securities transactions and that "to make," in this context, is "the approximate equivalent of 'to state.'"  *Janus*, 131 S. Ct. at 2302.  From that starting point, and emphasizing that section 10(b)'s "private right of action does not include suits against aiders and abettors," the Court reasoned that only those with "ultimate authority" over misstatements can be deemed to have "made" them.  *Id.* at 2302.  The proper analogy, the Court explained, "might best be exemplified by the relationship between a speechwriter and a speaker":

> For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. . . .  This rule might best be exemplified by the relationship between a speechwriter and a speaker.  Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it.  And it is the speaker who takes credit – or blame – for what is ultimately said.

*Id.*

With this in mind, the Court held that Janus Capital Management could not be liable, holding that it lacked the requisite "ultimate control" analogous to that of the speech deliverer:

> [The investor] suggests that both [Janus Capital Management] and Janus Investment Fund might have "made" the misleading statements within the meaning of Rule 10b-5 because [Janus Capital Management] was significantly involved in preparing the prospectuses.  But this assistance, subject to the ultimate control of Janus Investment Fund, does not mean that [Janus Capital Management] "made" any statements in the prospectuses.  Although [Janus Capital Management], like a speechwriter, may have assisted Janus Investment Fund with crafting what Janus Investment Fund said in the prospectuses, [Janus Capital

Management] itself did not "make" those statements for purposes
of Rule 10b-5.

*Id.* at 2305.

The section 10(b) claim against GTIL fails for the same reasons.  Here, the firm

that "made" the statements at issue – the audit reports on DGW's financial statements – was

expressly Grant Thornton Hong Kong, not GTIL.  Both the audit reports and the consents to

include the reports in DGW's SEC filings were signed by Grant Thornton Hong Kong and make

no mention of GTIL.[14]  DGW disclosed that "GT Hong Kong was engaged to audit the

Company's financial statements."[15]  And Grant Thornton Hong Kong alone bore the statutory

obligation to audit DGW's financial statements.  In fact, GTIL could not have taken on that

obligation since GTIL is not itself an accounting firm, is not licensed to issue audit reports, and

SEC rules provide that an audit report can only be rendered by an "independent accountant."[16]

For that matter, GTIL had even less involvement here than Janus Capital

Management had with Janus Investment Fund.  While GTIL and Grant Thornton Hong Kong

shared the "Grant Thornton" name (like Janus Capital Management and Janus Investment Fund),

the complaint alleges nothing showing that the two entities had officers in common, that GTIL

provided management, administrative, or other services to Grant Thornton Hong Kong in

---

[14]     Young Decl. Ex. 1 (Compl.) ¶¶ 202, 203; Young Decl. Ex. 4 (Duoyuan Global Water Inc., Annual Report (Form 20-F), at F-1, Ex. 23.1 (June 18, 2010)); Young Decl. Ex. 5 (Duoyuan Global Water Inc., Registration Statement (Form F-1/A), at F-2, Ex. 23.1 (Jan. 20, 2010)); Young Decl. Ex. 6 (Duoyuan Global Water Inc., Registration Statement (Form F-1), at F-2, Ex. 23.1 (June 1, 2009)); Young Decl. Ex. 7 (Duoyuan Global Water Inc., Registration Statement (Form F-1MEF) (June 24, 2009)).

[15]     Young Decl. Ex. 3 (Duoyuan Global Water Inc., Report of Foreign Private Issuer (Form 6-K) (Dec. 27, 2010)).

[16]     Regulation S-X Rule 3-01, 17 C.F.R. Part 210.3-01 (which is applicable to the Form F-1 registration statements and annual report on Form 20-F at issue here) requires that, "There shall be filed, for the registrant and its subsidiaries consolidated, *audited* balance sheets as of the end of each of the two most recent fiscal years."  And Regulation S-X Rule 1-02(4)(d), 17 C.F.R. Part 210.1-02(4)(d) defines "audit" as the "examination of financial statements by an *independent accountant*."  (Emphasis added.)

connection with DGW or otherwise, or that GTIL had any role in preparing DGW's 2008 and 2009 audit reports.[17]

       None of this changes because the complaint further alleges that Grant Thornton Hong Kong "acted as an agent" of GTIL. As a consequence of its holding that a defendant must "make" a misstatement to be liable under section 10(b), the *Janus* Court separately held that, to the extent one independent entity can ever be liable for the misstatements of another, "attribution is necessary." *Janus*, 131 S. Ct. at 2305 n.11. The Court explained that without attribution a non-speaker cannot be deemed to have "made" a misstatement. *Id.* In this respect, *Janus* affirms established law in the Second Circuit holding that there must be attribution for one independent entity to be liable for the statements of another. *See Pacific Inv. Mgmt. v. Mayer Brown LLP*, 603 F.3d 144, 148 (2d Cir. 2010) ("a secondary actor can be held liable in a private damages action brought pursuant to Rule 10b-5(b) only for false statements attributed to the secondary actor"); *In re Celestica Inc. Sec. Litig.*, No. 07 CV 312, 2010 WL 4159587, at *3 n.3 (S.D.N.Y. Oct. 14, 2010) (Daniels, J.) ("Secondary actors, such as accountants, lawyers and other parties not employed by the issuing company, cannot be held liable for a statement not attributable to them at the time of its dissemination."); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998). No attribution to GTIL existed here, which is understandable since only Grant Thornton Hong Kong served as auditor.

---

[17]     All the complaint musters is the vague intimation that GTIL, along with Grant Thornton Hong Kong, somehow audited DGW's financial statements (Young Decl. Ex. 1 (Compl.) ¶¶ 1, 58) – which is flatly contradicted by both the more precise allegations that Grant Thornton Hong Kong actually issued the audit reports and by the content of the underlying audit reports themselves. *See* Young Decl. Ex. 1 (Compl.) ¶¶ 202, 203; *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (dismissing section 10(b) claims based on "speculation and conclusory allegations."); *In re Refco Mkts., Ltd. Brokerage Customer Sec. Litig.*, 586 F. Supp. 2d 172, 177-78 (S.D.N.Y. 2008) ("General, conclusory allegations need not be credited, however, when they are belied by the more specific allegations of the complaint.") (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F. 3d 1085, 1092 (2d Cir. 1995)).

Nor are the complaint's "agency" allegations sufficient to sustain the section 10(b) claim against GTIL even aside from the absence of attribution. The *Janus* Court made clear that claims against those who do not themselves "make" misstatements are now to be asserted under the "control person" provisions of section 20. *Janus*, 131 S. Ct. at 2304; *see* 15 U.S.C. § 78t(a). And even before *Janus*, the courts consistently held that claims of agency against an accounting umbrella entity like GTIL failed absent specific facts showing that the organization was able to "control" the particular audit being challenged. *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919, at *3-4 (S.D.N.Y. Nov. 26, 2008); *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *5 (S.D.N.Y. Jan. 22, 2004); *see also In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003). The complaint here relies exclusively on allegations that GTIL required member firms to commit to common "standards and values" and that it at one point expelled Grant Thornton Hong Kong for unspecified reasons[18] – which is not alleged to constitute *Janus*-type "control" under section 20 and, under the pre-*Janus* cases, does not show "control" over the DGW audits. *Star Energy Corp.*, 2008 WL 5110919 at *3; *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613, 2004 WL 112948 at *5.

The decision in *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008), is instructive. There, as here, investors sued accounting umbrella entity RSM International on the basis of audit reports issued by member firm RSM Top-Audit on the financial statements of a client named Star Energy. *Id.* at *1. As here, the investors alleged that RSM Top-Audit "was an agent of RSM International." *Id.* at *3. And, as here, the investors premised their claim of agency on the assertion that RSM International

---

[18]     Young Decl. Ex. 1 (Compl.) ¶¶ 59, 60.

"promulgat[ed] the audit manual and policies" applicable to RSM Top-Audit and "controlled RSM Top-[A]udit's eligibility for membership" in the umbrella organization. *Id.* at *3. The court dismissed the claim, holding that agency required a showing that RSM International "was in control of RSM Top-Audit *in its business dealings with Star Energy*" and that allegations that RSM International set standards for its member firms and controlled their membership in the accounting organization showed nothing of the sort. *Id.* at *3 (emphasis added); *see also In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d at 396 ("setting professional standards and principles" insufficient to establish "control").

Along similar lines, this Court rejected an agency claim in *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *5 (S.D.N.Y. Jan. 22, 2004), in the context of one member firm being sued as the supposed agent of another. Holding that the Peruvian member firms of PricewaterhouseCoopers and Arthur Andersen could not be deemed agents of their United States counterparts without facts showing control over the specific audits at issue, this Court stated:

> Member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name.

*Id.* at *3. The same result follows here.[19]

---

[19] Nor does the decision in *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005), suggest a different result. In that case, the court declined to dismiss section 10(b) claims against Grant Thornton International and Deloitte Touche Tohmatsu ("DTT") (Deloitte's international umbrella entity) premised upon the supposed misstatements of member firms in connection with the Parmalat audits. *Id.* at 294-312. But there, the court addressed numerous allegations regarding agency as to the particular audits at issue including allegations that the member firm "sought direction and help" from DTT in connection with the Parmalat audits (*id.* at 294) and that Grant Thornton International had "disciplin[ed] GT-Italy and some of its individual partners for their alleged participation in the Parmalat fraud." *Id.* at 299-300. Here, GTIL had no involvement whatsoever in any aspect of the DGW audits. In any event, *Parmalat* predates the Supreme Court's holding in *Janus* that a claim can be brought only against the entity that actually "makes" the statement at issue.

**B.      The Complaint Does Not Allege Scienter As To GTIL.**

The section 10(b) claim also fails to plead scienter as to GTIL.  Scienter requires

affirmative proof of a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst*

*& Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  As such, even to the extent recklessness

will suffice to state a section 10(b) claim, "[r]ecklessness in the scienter context cannot be

merely enhanced negligence." *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 535

(S.D.N.Y. 2009); *see also South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d

Cir. 2009).  It must be akin to "knowing misconduct." *In re Carter-Wallace, Inc. Sec. Litig.*, 220

F.3d 36, 39 (2d Cir. 2000).  More than that, scienter must be found with respect to each

defendant, meaning that securities plaintiffs cannot plead scienter against one entity through

facts relating to another. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996); *Glickman v.*

*Alexander & Alexander Servs., Inc.*, No. 93 Civ. 7594, 1996 WL 88570, at *15 (S.D.N.Y. Feb.

29, 1996).

Securities plaintiffs also cannot rely on generic pleading and conclusory

assertions in pleading scienter.  Rather, plaintiffs must state facts that create an inference of

scienter that is "more than merely plausible or reasonable – it must be cogent and at least as

compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 314 (2007) (interpreting 15 U.S.C. § 78u-4(b)(2)); *see also ECA &*

*Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d

Cir. 2009) ("courts must consider both the inferences urged by the plaintiff and any competing

inferences rationally drawn from all the facts alleged, taken collectively").

Given GTIL's lack of involvement, the complaint here does not even come close.

There is literally nothing in the complaint about GTIL's conduct or knowledge.  All the

complaint does is make allegations directed to Grant Thornton Hong Kong – to the effect, for

example, that Grant Thornton Hong Kong knew that DGW filed "substantially and materially different" financial statements with the SEC than with the Chinese Administration for Industry and Commerce and ignored supposed "red flag[s]"[20] – and then seek to impute those allegations to GTIL.[21]

Courts routinely reject this type of pleading, holding specifically that allegations directed at one entity do not suffice to allege that a related entity acted with scienter. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("whether [the subsidiary] defrauded plaintiffs and whether its parent . . . defrauded plaintiffs are different questions"); *Glickman v. Alexander & Alexander Servs., Inc.*, No. 93 Civ. 7594, 1996 WL 88570, at *15 (S.D.N.Y. Feb. 29, 1996) (dismissing complaint against parent where "allegations fail in every instance to connect the underlying set of facts concerning [subsidiary's] inaccurate reporting to any conscious misconduct or recklessness approximating fraud" by the parent); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) ("[A]llegations of accounting improprieties at a subsidiary are not enough to demonstrate scienter by a parent corporation"); *see also Higginbotham v. Baxter Int'l., Inc.*, 495 F.3d 753 (7th Cir. 2007).

## II.   THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM AGAINST GTIL.

Plaintiffs' section 11 claim fails too.  Section 11 claims can only be asserted against defendants that fall within five "narrowly drawn categories."  *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, No. 10–0712–cv, 2011 WL 1778726, at *13 (2d Cir. May 11, 2011). Of particular relevance, an accountant can be sued under section 11 only to the extent the accountant "has with his consent been named as having prepared or certified . . . part of the

---

[20]     Young Decl. Ex. 1 (Compl.) ¶¶ 119, 146.

[21]     Young Decl. Ex. 1 (Compl.) ¶¶ 58, 146, 157.

registration statement." 15 U.S.C. § 77k(a)(4); 15 U.S.C. § 77k(b)(3)(C); *see also Adair v. Kaye Kotts Assocs., Inc.*, No. 97 CIV. 3375, 1998 WL 142353, at *4 (S.D.N.Y. Mar. 27, 1998).

Here, GTIL was not involved in the 2008 and 2009 DGW audits or, for that matter, any services to DGW at all. So GTIL neither "certified" any DGW financial statement nor "consented" to the inclusion of its name in DGW's registration statements, and could have done neither as GTIL is not itself an accounting firm. That means that GTIL cannot be sued under section 11. *Adair v. Kaye Kotts Assocs., Inc.*, No. 97 CIV. 3375, 1998 WL 142353, at *4 (S.D.N.Y. Mar. 27, 1998) ("to state a claim against an accountant under this provision, the accountant must have prepared or certified a statement in connection with a registration statement that was false or misleading"); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865, 2004 WL 1305845, at *12 (S.D.N.Y. May 18, 2004) (Report and Recommendation) ("because [defendant accounting firm's] name is not mentioned in the . . . Registration Statement, or any of the documents incorporated by reference, the Plaintiffs' Section 11 claim against that firm must be dismissed with prejudice").

Nor, once again, do the complaint's agency allegations lead to a different conclusion. The list of persons that can be sued contained within section 11 itself is exclusive and cannot be expanded. *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 2011 WL 1778726, at *10 ("§ 11 was designed to impose its exacting standards regarding the provision of accurate and complete information *only* on the people (or entities) . . . engaged in the public offering") (internal citations omitted, emphasis added); *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8628, 2008 WL 3843343, at *3 (S.D.N.Y. Aug. 14, 2008) (section 11 liability does not extend beyond "the specific categories of individuals defined in § 11 as the proponents of the statement"); *see also Adair v. Kaye Kotts Assocs., Inc.*, No. 97 CIV. 3375, 1998 WL 142353, at *4 (S.D.N.Y. Mar. 27,

1998); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865, 2004 WL 1305845, at *12 (S.D.N.Y. May 18, 2004) (Report and Recommendation).

## CONCLUSION

For the foregoing reasons, GTIL's motion to dismiss should be granted, and the complaint should be dismissed with prejudice to the extent directed to GTIL.[22]

Dated:  November 22, 2011

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: _____

Michael R. Young
myoung@willkie.com
Antonio Yanez, Jr.
ayanez@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 (telephone)
(212) 728-8111 (facsimile)

*Attorneys for Defendant*
*Grant Thornton International Ltd*

6856277.14

---

[22] The "corrected" amended complaint is the third complaint filed by plaintiffs in this case.  At this point, the Court may presume that plaintiffs have framed their pleading as well as they will ever be able to, and dismiss the complaint with prejudice. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 518 (S.D.N.Y. 1997) (dismissing with prejudice where plaintiffs had "presented nothing to suggest that they could amend the complaint to adequately plead a . . . cause of action.") (internal quotations omitted), *aff'd*, 136 F.3d 313 (2d Cir. 1998); *see also Hinerfeld v. United Auto. Grp.*, No. 97 Civ. 3533, 1998 WL 397852, at *8 (S.D.N.Y. July 15, 1998).