UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

HOI MING MICHAEL HO, *et al.*,                :

                        Plaintiffs,                :        No. 10 Civ. 7233 (GBD)

                                                       :

        - against -                                :

                                                       :

DUOYUAN GLOBAL WATER, INC., *et al.*,   :

                        Defendants.              :

                                                       :
_____   :


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
GLOBAL ENVIRONMENT FUND AND GEEMF III HOLDINGS MU'S
MOTION TO DISMISS THE CORRECTED AMENDED COMPLAINT**


AKIN GUMP STRAUSS HAUER & FELD LLP
Nancy Chung
Peter I. Altman
Jacqueline G. Yecies
One Bryant Park
New York, NY 10036
(212) 872-1000

*Attorneys for Defendants Global Environment Fund
and GEEMF III Holdings MU*

November 22, 2011

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS RELEVANT TO THE GEF DEFENDANTS .....................................2

ARGUMENT ........................................................................................................5

I.      PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM ..............................................5

        A.      Neither GEF Nor GEEMF "Made" Any Misstatements ..........................................5

        B.      Plaintiffs Fail To Allege That GEF And GEEMF Acted With Any Scienter ...........8

                1.      Plaintiffs Do Not Sufficiently Allege Motive And Opportunity .................8

                2.      Plaintiffs Do Not Allege Conscious Misbehavior Or Recklessness ..........10

II.     PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM ...............................................12

III.    PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM ...............................................13

        A.      Plaintiffs Fail To Allege That GEF Or GEEMF Controlled DGW ......................14

        B.      Plaintiffs Fail To Allege That GEF Or GEEMF Controlled Larrea .....................18

CONCLUSION ....................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Alstom SA,*
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)......................................................................15

*In re Am. Note Holographics, Inc. Sec. Litig.,*
    93 F. Supp. 2d 424, 436-68 (S.D.N.Y. 2000) ........................................................13

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009).............................................................................................14

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)....................................................................................5, 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................14

*In re Carter-Wallace, Inc. Sec. Litig.,*
    No. 94 Civ. 5704, 1999 WL 1029713 (S.D.N.Y. Nov. 10, 1999) ...........................9

*In re Celestica Inc. Sec. Litig.,*
    No. 07 Civ. 312, 2010 WL 4159587 (S.D.N.Y. Oct. 14, 2010) ....................*passim*

*Chill v. Gen. Elec.,*
    101 F.3d 263 (2d Cir. 1996).................................................................................8, 9

*City of Brockton Ret. Sys. v. Shaw Grp.,*
    540 F. Supp. 2d 464 (S.D.N.Y. 2008)....................................................................11

*Coronel v. Quanta Capital Holdings, Ltd.,*
    No. 07 Civ. 1405, 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)..............................11

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)...................................................................................................5

*Ellison v. Am. Image Motor Co.,*
    36 F. Supp. 2d 628 (S.D.N.Y. 1999)......................................................................14

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
    463 F. Supp. 2d 628 (S.D. Tex. 2006) ...................................................................19

*In re Global Crossing, Ltd. Sec. Litig.,*
    No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) .....................*passim*

*Herman & MacLean v. Huddleston,*
    459 U.S. 375 (1983)................................................................................................12

*Hutchison v. Deutsche Bank Sec., Inc.*,
   647 F.3d 479 (2d Cir. 2011)........................................................................................13

*Janus Capital Group, Inc. v. First Derivative Traders*,
   131 S. Ct. 2296 (2011) ...........................................................................................5, 7

*In re J.P. Jeanneret Assocs., Inc.*,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011)..........................................................................8

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).......................................................................................10

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991).........................................................................................3

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
   650 F.3d 167 (2d Cir. 2011).............................................................................. *passim*

*In re Livent Sec. Litig.*,
   148 F. Supp. 2d 331 (S.D.N.Y. 2001).........................................................................10

*LLDVF, L.P. v. Dinicola*,
   No. 09-128, 2010 WL 3210613 (D.N.J. Aug. 12, 2010) ............................................16

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
   724 F. Supp. 2d 447 (S.D.N.Y. 2010).........................................................................11

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006).........................................................................14

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08 Civ. 8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ..............................13, 17, 18

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).......................................................................................10

*In re Optimal U.S. Litig.*,
   No. 10 Civ. 4095, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) .........................................6, 7

*Ouaknine v. MacFarlane*,
   897 F.2d 76 (2d Cir. 1990)............................................................................................8

*Public Emp. Ret. Sys. v. Merrill Lynch & Co.*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010).......................................................................14, 15

*Rapoport v. Asia Elec. Holding Co.*
   88 F. Supp. 2d 179 (S.D.N.Y. 2000).........................................................................17

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)..................................................................................10

*S. Cherry St., LLC v. Hennessee Grp., LLC*,
    573 F.3d 98 (2d Cir. 2009)....................................................................................9

*Schlifke v. Seafirst Corp.*,
    866 F.2d 935 (7th Cir. 1989) ..............................................................................18

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*,
    941 F. Supp. 1369 (S.D.N.Y. 1996).....................................................................15

*In re Sotheby's Holdings, Inc.*,
    No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .........................10

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)...................................................................................8

*Tellabs v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................8, 9

*Tiberius Capital, LLC v. Petrosearch Energy Corp.*,
    No. 09 Civ. 10270, 2011 WL 1334839 (S.D.N.Y. Mar. 31, 2011) .......................11

FEDERAL RULES, STATUTES, AND REGULATIONS

Fed. R. Civ. P. 8 ...........................................................................................................1, 13

Fed. R. Civ. P. 9(b) ...........................................................................................1, 2, 5, 7

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 3

15 U.S.C. § 77o..................................................................................................................13

15 U.S.C. § 78u-4(b)(1) & (2) ........................................................................................1, 8

17 C.F.R. § 240.10b-5.........................................................................................................5

Global Environment Fund ("GEF") and GEEMF III Holdings MU ("GEEMF," and together with GEF, the "GEF Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss the Corrected Amended Complaint (the "Complaint" or "CAC") pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b).[1]

## PRELIMINARY STATEMENT

In a futile attempt to cast a wide net, Plaintiffs' Complaint – on its face – fails to state any claim that links either GEF or its affiliate GEEMF, a minority shareholder, to the alleged fraud at Duoyuan Global Water, Inc. ("DGW" or the "Company").  Rather, the Complaint's own allegations demonstrate that the GEF Defendants neither made nor signed any of the alleged misstatements in the disclosure documents associated with DGW's 2009 initial public offering (the "IPO") or 2010 secondary offering (the "SPO") on the New York Stock Exchange, and also did not control the day-to-day management of DGW.  Plaintiffs' allegations against the GEF Defendants – whose names appear in only 10 of the 277 paragraphs in the 138 page Complaint – rest solely on GEEMF's status as a minority investor and GEF's employment of Joan Larrea, who served on DGW's Board as an outside director.  These facts are simply insufficient to support any claim for a violation of the securities laws, and Plaintiffs' claims against the GEF Defendants must be dismissed in their entirety and with prejudice for the following reasons.

*First*, Plaintiffs' failure to plead that GEF or GEEMF were "makers" of any alleged misstatements is fatal to their Section 10(b) claim (Count III) under the Supreme Court's recent

---

[1] GEEMF III Holdings MU, referenced in ¶¶ 1 and 45 of the Complaint, is referred to at times, including in the caption, as "Global Environment Emerging Market Fund III Holdings MU" – an entity that does not exist.  This Motion is thus made on behalf of the correct entity, GEEMF III Holdings MU.  In addition, "Global Environment Fund" is not a legal entity but rather serves as a trade name for various entities, including, at times, GEEMF.  GEF and GEEMF accordingly reserve all rights and defenses associated with these designations in making this Motion.

controlling decision in *Janus*.  Although the Court's analysis should end there, Plaintiffs' Section 10(b) claim against the GEF Defendants also fails because Plaintiffs allege insufficient facts to support a "strong inference" of scienter as required under Rule 9(b) and the PSLRA.

*Second*, Plaintiffs' Section 11 claim (Count I) against the GEF Defendants fails because neither GEF nor GEEMF were signatories to the IPO or SPO registration statements at issue or otherwise fall within the limited class of statutorily enumerated parties subject to liability.

*Third*, Plaintiffs' Section 15 claim (Count II) fails against the GEF Defendants because Plaintiffs do not sufficiently plead a primary Section 11 violation.  Moreover, Plaintiffs' Section 15 claim fails on independent grounds because Plaintiffs do not allege any facts that the GEF Defendants either controlled DGW by direct involvement in the Company's day-to-day management, or controlled Larrea in her capacity as an outside director for DGW.

## STATEMENT OF FACTS RELEVANT TO THE GEF DEFENDANTS[2]

***GEEMF's Early Minority Equity Investment in DGW.***  GEF is a leading, Maryland-based investment firm focused on, among other areas, clean technology.  In February 2008, GEEMF, an affiliate of GEF, acquired a minority equity interest in DGW.  CAC ¶ 61.  At the time of GEEMF's investment in DGW, Defendant Joan Larrea, alleged to be a managing director of an affiliate of GEF, was appointed to DGW's Board of Directors – a position she held until her resignation from the Board in April 2011.  *Id.* ¶¶ 45, 218.  As a minority equity holder of DGW, GEEMF also obtained limited shareholder rights, discussed *infra* at Section (III)(A), under an

---

[2] To avoid duplication, the GEF Defendants incorporate herein the Statement of Facts in DGW's memorandum of law ("DGW's Brief") for a complete recitation of the Complaint's allegations, and highlight here only those allegations relevant to the GEF Defendants.

Investors' Rights Agreement (the "IRA"), a document referenced in the Complaint and included in the disclosure documents associated with the IPO.  *Id.* ¶ 169.[3]

**DGW's Public Offerings on the New York Stock Exchange.**  In June 2009, DGW consummated an IPO on the New York Stock Exchange.  CAC ¶ 5.  The IPO, as acknowledged in the Complaint, terminated GEEMF's shareholder rights under the IRA that Plaintiffs allege are putative indicia of GEEMF's "control" of DGW.  *See id.* ¶ 167(b); IRA §§ 3.5, 5.8.  In January 2010, at the time of the SPO, GEEMF sold approximately 25% of its holdings in DGW – which, without dispute, was the only sale of DGW securities it has ever made – and retained, as it does today, the majority of its investment in DGW.  CAC ¶ 11.[4]  Defendant Wenhua Guo, DGW's founder, Chairman of the Board and Chief Executive Officer, retained his majority ownership and remains DGW's controlling shareholder.  CAC ¶ 166.

**Sparse Allegations Against the GEF Defendants.**  The Complaint is sparse in its allegations against the GEF Defendants, and yet alleges they are liable for three separate violations of the federal securities laws.

*Section 10(b) of the Exchange Act.*  Plaintiffs expressly limit the allegations in their Section 10(b) claim against the GEF Defendants "to the misstatements or omissions in the *IPO Offering Documents.*"  *Id.* ¶ 174 (emphasis added).  Plaintiffs do not make a single allegation that the GEF Defendants *made* any of the alleged misstatements or omissions in the disclosure documents associated with either the IPO or SPO (the "Offering Documents").  Instead, Plaintiffs allege that "the misstatements of financial figures and other information" in the

---

[3] *See* DGW, IPO Registration Statement (Form F-1), attaching IRA as Ex 4.4 (June 1, 2009), *available at* http://www.sec.gov/Archives/edgar/data/1465317/000095012309010158/h03310exv4w4.txt.  DGW's public filings are referenced extensively in the Complaint, and are therefore properly considered on a motion to dismiss under Rule 12(b)(6).  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (district court properly considered public documents filed with SEC on motion to dismiss).

[4] *See* DGW, SPO Registration Statement (Form F-1), at 120 (Jan. 8, 2010), *available at* http://www.sec.gov/Archives/edgar/data/1465317/000095012310003583/h03898a2fv1za.htm.

Offering Documents were made with scienter because the GEF Defendants, together with the Company, management defendants and auditor defendants, "knew or should have known" as a result of local Chinese filings with the Chinese Agency for Industry and Commerce ("SAIC") for certain DGW subsidiaries that the Company's financial reporting and operational data was "materially overstated." *Id.* ¶¶ 175-76; *see also id.* ¶ 258 (alleging in conclusory fashion "Additional Scienter Allegations").

     *Section 11 of the Securities Act.*  Plaintiffs allege that the GEF Defendants are liable under Section 11 for the allegedly false statements contained in DGW's registration statements for the IPO and SPO.  *Id.* ¶ 70.  Plaintiffs, however, do not – and cannot – allege anywhere in the Complaint that either GEF or GEEMF were signatories to these registration statements or among the other statutorily enumerated parties subject to Section 11 liability if such filings in fact contained misstatements.

     *Section 15 of the Securities Act.*  Plaintiffs allege that the GEF Defendants controlled both DGW and Larrea, and therefore are liable as "control" persons under Section 15.  As support, Plaintiffs allege that GEEMF:  (*i*) appointed Larrea to DGW's Board; (*ii*) had the ability to receive monthly financial reporting from DGW and to inspect DGW's facilities; and (*iii*) held "approval" rights over certain types of corporate actions by DGW and a conditional right to "select" a new CEO, while at the same time acknowledging that this right was never exercised. *Id.* ¶ 169.  The Complaint further alleges that GEF, through GEEMF, helped to "position the company" for its road show and IPO.  *Id.* ¶ 170.  The Complaint does not allege how the GEF Defendants or Larrea controlled or directed DGW's day-to-day management, or how the GEF Defendants controlled Larrea in her capacity as an outside director for DGW.

**ARGUMENT**[5]

**I.     PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM**

In order to state a claim under Section 10(b) of the Securities Exchange Act and Rule

10b-5 promulgated thereunder, a plaintiff must allege:  (*i*) a material misrepresentation or

omission; (*ii*) "made" by a defendant; (*iii*) with scienter; (*iv*) in connection with the purchase or

sale of a security; (*v*) reasonable reliance by the plaintiff on the misrepresentation or omission;

(*vi*) economic loss; and (*vii*) proximate causation.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336,

341-42 (2005).  Section 10(b) claims are also subject to the heightened pleading requirements

imposed by Rule 9(b) and the PSLRA.  *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99

(2d Cir. 2007).[6]  Plaintiffs cannot plead the basic elements of a Section 10(b) claim, rendering

their claim against the GEF Defendants fatally deficient.

**A.     Neither GEF Nor GEEMF "Made" Any Misstatements**

The recent Supreme Court decision in *Janus Capital Group, Inc. v. First Derivative*

*Traders*, 131 S. Ct. 2296 (2011), squarely rejects Plaintiffs' Section 10(b) claim against GEF and

GEEMF, as Plaintiffs do not – and cannot – allege that GEF or GEEMF "made" any of the

allegedly false statements at issue.  In *Janus*, the Supreme Court held that Section 10(b) liability

did not extend to an investment adviser hired by an affiliated mutual fund to manage the fund's

portfolio because the investment adviser, a legal entity separate and distinct from the fund, did

not "make" any of the allegedly false statements included in the fund's prospectuses.  *Id.* at 2301.

The Court reasoned that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or

entity with *ultimate authority* over the statement, including its content and whether and how to

---

[5] For the purposes of this Motion only, the GEF Defendants hereby incorporate the arguments, to the extent they are applicable to dismissal of Counts I through III, made in the motions filed by DGW and other defendants in this action.

[6] The heightened pleading standards applicable to the claims against the GEF Defendants under Rule 9(b) and the PSLRA are incorporated by reference from DGW's Brief.

communicate it." *Id.* at 2302 (emphasis added).  Thus, allegations that the investment adviser was "significantly involved in preparing the prospectuses" and had significant influence over the fund did not establish that the investment adviser had "made" any statements in the prospectuses or had ultimate authority over its contents.  *Id.* at 2305.  Accordingly, because the investment adviser did not make any statements, the Court held that the complaint failed to state a claim and was properly dismissed.  *Id.*

As courts in this District have already recognized, *Janus* emphasizes the "narrow scope" and "formalistic approach" to the private right of action under Section 10(b).  *In re Optimal U.S. Litig.*, No. 10 Civ. 4095, 2011 WL 4908745, at *5 (S.D.N.Y. Oct. 14, 2011).  Indeed, even a 100% shareholder of an issuer alleged to have the right to "appoint and remove [the issuer's] directors at will" was found under *Janus not* to have "ultimate authority" over the contents of the offering documents and, therefore, was not the "make[r]" of any statements therein.  *Id.* at *4-5.

As a preliminary matter, Plaintiffs here explicitly limit their Section 10(b) claim against GEF and GEEMF to allegations relating to the IPO – not the SPO – by pleading in the Complaint:  "The allegations in this [Section 10(b)] Count as to GEF and GEEMF are made *only with respect to the misstatements or omissions in the IPO Offering Documents.*"  CAC ¶ 174 (emphasis added).  In any event, Plaintiffs do not – and cannot – allege that GEF or GEEMF "made" any statement in any Offering Document or had "ultimate authority" over their contents. In fact, Plaintiffs plead the opposite – namely that "[t]he fair presentation of financial statements in conformity with GAAP is the responsibility of company management" and "[t]he Company is the registrant for the IPO and SPO." *Id.* ¶ 126.  Like the mutual fund in *Janus* and the issuer in *Optimal*, only DGW had the statutory obligation to file the Offering Documents, and Plaintiffs do not plead that GEF or GEEMF had any authority – let alone "ultimate authority" – over the

content of these filings. *Janus*, 131 S. Ct. at 2302; *Optimal*, 2011 WL 490875, at *6. For this reason alone, Plaintiffs' Section 10(b) claim against the GEF Defendants must be dismissed with prejudice.

Nor can Plaintiffs rely on the group pleading doctrine to circumvent *Janus* and the heightened pleading requirements for securities fraud claims. *See, e.g.*, CAC ¶¶ 172, 175-76, 258. This Court's decision in *Celestica* – a decision that pre-dates *Janus* – rejected similar conclusory allegations similar to those featured in the Complaint. *In re Celestica Inc. Sec. Litig.*, No. 07 Civ. 312, 2010 WL 4159587 (S.D.N.Y. Oct. 14, 2010) (Daniels, J.). There, plaintiffs brought a Section 10(b) claim against an issuer, former members of management, and the issuer's *controlling* shareholder, alleging the issuer misstated its financials. *Id.* at *1-2. Plaintiffs alleged that pursuant to a management services agreement, Onex, the controlling shareholder, provided the issuer with "management, administrative, strategic planning, [and] financial and support services" on a "continuing basis," and that Onex's CEO was a control person of the issuer. *Id.* at *1 (internal citation and quotations omitted). This Court held that these group pleading allegations did not satisfy Rule 9(b) and the PSLRA because the plaintiffs failed to allege that either Onex or its CEO "made" – or had "any role in the preparation, issuance or dissemination" of – the alleged misstatements by the issuer. *Id.* at *4. Thus, Onex's controlling ownership interest and the CEO's regular attendance at management meetings were not enough to support a claim. *Id.*

Likewise, here, Plaintiffs do not – and cannot – allege through group pleading allegations that the GEF Defendants made any misstatements, were responsible for "creating, reviewing or approving" DGW's public financial disclosures, or belonged to the group of corporate insiders

who had "direct involvement" in the day-to-day management of the Company.  *Celestica*, 2010

WL 4159587, at *3 (citing *Ouaknine v. MacFarlane*, 897 F.2d 76, 80 (2d Cir. 1990)).[7]

### B.  Plaintiffs Fail To Allege That GEF And GEEMF Acted With Any Scienter

In addition to failing to plead that the GEF Defendants made any misstatements,

Plaintiffs also fail to allege any facts supporting a "strong inference" that the GEF Defendants

acted with scienter.  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531

F.3d 190, 195 (2d Cir. 2008); *see also* 15 U.S.C. § 78u-4(b)(1) & (2) (Section 10(b) plaintiff

must state "with particularity facts giving rise to a strong inference" of scienter); *Tellabs v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (inference of scienter "must be more than

merely plausible or reasonable – it must be cogent and at least as compelling as any opposing

inference of nonfraudulent intent").  Moreover, a strong inference of scienter must be supported

by particularized allegations that either (*i*) show that the defendant "had both motive and

opportunity to commit the fraud," or (*ii*) constitute "strong circumstantial evidence of conscious

misbehavior or recklessness."  *ATSI*, 493 F.3d at 99.  Plaintiffs' sparse and generalized

allegations against the GEF Defendants do not meet this well-established test.

### 1.  Plaintiffs Do Not Sufficiently Allege Motive And Opportunity

To establish motive, Plaintiffs must allege facts demonstrating "concrete benefits that

could be realized by one or more of the false statements and wrongful nondisclosures alleged."

*Chill v. Gen. Elec.*, 101 F.3d 263, 268 (2d Cir. 1996).  Here, as discussed above, Plaintiffs

*explicitly limit their Section 10(b) claim against GEF and GEEMF to the IPO* (CAC ¶ 174),  and

---

[7] Moreover, none of the purported misstatements are attributable to the GEF Defendants as secondary actors in the IPO or SPO.  *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 371-72 (S.D.N.Y. 2011) (dismissing Section 10(b) claim for alleged "facilitator" who played "behind-the-scenes role," where no statements were attributed to him).

acknowledge further that only DGW – not GEF or GEEMF – sold shares at the IPO. *Id.* ¶ 11.[8]

Absent allegations of any concrete benefit to the GEF Defendants, Plaintiffs are left, if anything,

with only the motive to maintain the appearance of a successful investment. But such

generalized allegations are insufficient to establish scienter under Section 10(b). *See Chill*, 101

F.3d at 268 ("motive to maintain the appearance of corporate profitability, or the success of an

investment" does not entail "concrete benefit" to establish scienter); *see also Celestica*, 2010 WL

415987, at *5.

In *Celestica*, the plaintiffs alleged that Onex, the majority shareholder of Celestica (the

issuer), and Onex's CEO had a motive to participate in the issuer's alleged fraudulent scheme to

inflate earnings because it would increase the issuer's stock price, and in turn increase the value

of the majority shareholder's controlling interest. *Id.* This Court held, however, that such

allegations of generalized "economic self interest" are not sufficiently concrete to establish

scienter. *Id.* The Court should so hold again here, rejecting any putative "economic self

interest" deriving from the GEEMF's stock holdings in DGW – notably only a minority interest,

unlike majority shareholder Onex. *See S. Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98,

109 (2d Cir. 2009) (finding interest in, *inter alia*, sustaining success of investment insufficient to

establish scienter).

---

[8] Notwithstanding this clear limitation, even if the Court were to construe the Complaint as alleging a Section 10(b) violation against the GEF Defendants with respect to the *SPO*, that claim must also fail. In determining whether a complaint sufficiently alleges scienter, "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs*, 551 U.S. at 326. As Plaintiffs themselves plead, GEEMF sold only a quarter of their shares in the SPO and remains a minority equity holder of DGW stock to this day. CAC ¶ 11. GEEMF's retention of 75% of their DGW shares – shares which declined significantly over time – negates any inference of scienter by GEEMF. *See In re Carter-Wallace, Inc. Sec. Litig.*, No. 94 Civ. 5704, 1999 WL 1029713, at *5 (S.D.N.Y. Nov. 10, 1999), *aff'd*, 220 F.3d 36 (2d Cir. 2000) (court must examine "circumstances surrounding each sale" and "[n]o inference of scienter should be drawn from insider trading activity unless that activity is unusual").

### 2.      Plaintiffs Do Not Allege Conscious Misbehavior Or Recklessness

To plead "conscious misbehavior or recklessness," a plaintiff must allege specific facts demonstrating that a defendant's conduct was "an extreme departure from the standards of ordinary care," *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000), in that a defendant:  (*i*) "engaged in deliberately illegal behavior"; (*ii*) "knew facts or had access to information suggesting that their public statements were not accurate"; or (*iii*) "failed to check information they had a duty to monitor," *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).  Where, as here, Plaintiffs' motive allegations are deficient, "the strength of the circumstantial allegations must be correspondingly greater."  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir.  2001).

Plaintiffs do not plead that GEF or GEEMF either "engaged in deliberately illegal behavior" or "failed to check information they had a *duty* to monitor."  *Novak*, 216 F.3d at 309 (emphasis added); s*ee also In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) (dismissing Section 10(b) claim against financial officers where, *inter alia*, the complaint failed to allege that defendants had a duty to monitor or violated such a duty by failing to check information).[9]  Plaintiffs thus rely only on vague allegations of "access to contrary facts," but fail to sufficiently allege that the GEF Defendants had received or reviewed information contrary to that released in DGW's public statements – none of which, as discussed, were made by the GEF Defendants.  *See Novak*, 216 F.3d at 309 ("Where plaintiffs

---

[9] In fact, the financial statements filed by DGW relating to the IPO and SPO are alleged to have received unqualified audit opinions from an independent auditor, Defendant Grant Thornton International Ltd. CAC ¶¶ 58, 74, 75, 87, 88, 128, 132.  Plaintiffs themselves acknowledge that GEF was entitled to rely on such audited financial information.  *See id.* ¶ 151 ("Public investors, creditors and others rely on independent, registered public accounting firms to audit financial statements and assess internal controls").  These clean audit opinions are highly probative of an absence of scienter by GEF and GEEMF and are clearly inconsistent with allegations that either party acted with an "extreme departure" from standards of ordinary care.  *See In re Livent Sec. Litig.*, 148 F. Supp. 2d 331, 371 (S.D.N.Y. 2001) (Section 10(b) claim against outside directors dismissed, in part, for failure to plead scienter because outside directors "relied on the representations of management and on [the auditor].").

contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.") (citation omitted).

First, Plaintiffs allege that, under the IRA, GEEMF "would receive monthly financial reporting from DGW," in addition to "premises access for inspections."  CAC ¶ 169.  Yet it is well settled that mere "access" to corporate information – absent identification of specific reports containing information contrary to that released to the public – is insufficient to establish scienter.  *See, e.g.*, *Tiberius Capital, LLC v. Petrosearch Energy Corp.*, No. 09 Civ. 10270, 2011 WL 1334839, at *5 (S.D.N.Y. Mar. 31, 2011) (Daniels, J.) (dismissing Section 10(b) claim because, *inter alia*, plaintiff did "not demonstrate [defendants'] knowledge of contradictory information"); *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 463 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011) (dismissing Section 10(b) claims because, *inter alia*, "Plaintiff [made] no showing that the Individual Defendants were aware of a specific report containing [contradictory] information"); *City of Brockton Ret. Sys. v. Shaw Grp.*, 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008) (dismissing securities class action because allegations that executives were "closely involved" does not create strong inference that they "were furnished with financial data which contained the errors").

Second, lumping the GEF Defendants together with other defendants, Plaintiffs allege that GEF and GEEMF  "knew or should have known" that Chinese SAIC filings by two DGW subsidiaries, Duoyuan Langfang and Duoyuan Beijing, materially differed from the Company's financial statements filed with the SEC.  CAC ¶¶ 175-76.  Nowhere in the Complaint do Plaintiffs allege that the GEF Defendants actually received, reviewed, or even knew of the SAIC filings, nor do they allege any link between the GEF Defendants and the SAIC filings.  *Coronel v. Quanta Capital Holdings, Ltd.*, No. 07 Civ. 1405, 2009 WL 174656 at *27 (S.D.N.Y. Jan. 26,

2009) (complaint failed to "'specifically allege defendants' knowledge of facts or access to information' contradicting the Company's public statements").  Instead, the Complaint relies again on allegations that the GEF Defendants knew or should have known that the Company's disclosures were misleading based on GEEMF's alleged access as a minority investor and its affiliate's employment of Larrea, a DGW Board member.  *Id.* ¶¶ 169, 175-76.  For the same reasons noted above, courts have routinely dismissed such generalized allegations of access to non-public information as a basis for scienter.  *See, e.g.*, *Celestica*, 2010 WL 4159587, at *5-6. Accordingly, Plaintiffs fail to adequately allege scienter against the GEF Defendants.

## II.   PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM

Plaintiffs' Section 11 claim against GEF and GEEMF fails because they do not fall within the limited class of statutorily enumerated parties subject to liability under Section 11 of the Securities Act.  Section 11 imposes liability for material misstatements or omissions in registration statements filed with the SEC *only on the following*:  (*i*) "signatories of the registration statement"; (*ii*) "directors or partners of the issuer at the time of filing"; (*iii*) "persons consenting to be named as about to become a director or partner [of the issuer]"; (*iv*) "accountants or other experts consenting to be named as preparing or certifying part of the registration statement"; and (*v*) "underwriters of the security at issue."  *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 175 (2d Cir. 2011).

Consistent with this statutory limitation, courts routinely dismiss Section 11 claims against parties that do not fall within the enumerated categories of permissible defendants, including significant shareholders of the issuer, even if they allegedly played a role in preparing the issuer's registration statement.  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 n.22 (1983) ("certain individuals who play a part in preparing the registration statement generally cannot be reached by a Section 11 action . . . even if the[se] parties engaged in fraudulent

conduct"); *Lehman*, 650 F.3d at 185 (Section 11 properly dismissed against credit ratings agencies because they did not fall within the statute); *In re Am. Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 436-68 (S.D.N.Y. 2000) (dismissing Section 11 claim against parent company of wholly-owned subsidiary-issuer).

Here, Plaintiffs allege that GEF was an "initial outside investor" in DGW.  CAC ¶ 11. The Complaint contains no allegations that either GEF or GEEMF were signatories to the IPO or SPO registration statements or otherwise fall within the other statutorily enumerated parties subject to Section 11 liability for misstatements in such filings.  The Section 11 claim against GEF and GEEMF thus fails at its most fundamental level and must be dismissed.

## III.   PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM

To impose Section 15 liability, a plaintiff must show a "primary violation" of Section 11 and control of the primary violator.  15 U.S.C. § 77o; *see Hutchison v. Deutsche Bank Sec., Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).  Here, as set forth in DGW's Brief and the Outside Directors' memorandum of law, Plaintiffs have failed to allege a primary violation by DGW or Larrea – those Defendants allegedly "controlled" by the GEF Defendants.  The Section 15 claim against the GEF Defendants therefore necessarily fails and must be dismissed.

The Section 15 claim must independently be dismissed for Plaintiffs'' failure to sufficiently plead that the GEF Defendants controlled either DGW or Larrea.  *See, e.g.*, *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781, 2010 WL 1257528, at *7 (S.D.N.Y. Mar. 31, 2010) (dismissing Section 15 claim even where primary violation of Section 11 was properly alleged).  Under Rule 8, a plaintiff must allege sufficient facts to establish the necessary element of "control," which the Second Circuit has defined for purposes of a Section 15 claim as the "power to direct the primary violators' management and policies."  *Lehman*, 650 F.3d at 186 (internal quotation marks omitted).  This is consistent with the Supreme Court's

decisions in *Twombly* and *Iqbal* finding that "legal conclusions" and "mere conclusory" statements" are not entitled to a presumption of truth at the motion to dismiss stage. *Public Emp. Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and dismissing Section 15 claim where plaintiffs' control allegations were no more than a "formulaic recitation of the elements of control person liability"); *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1907005, at \*12 (S.D.N.Y. Aug. 8, 2005).  Accordingly, Plaintiffs' conclusory allegations of the GEF Defendants' purported control of DGW and Larrea fail to state a Section 15 claim.[10]

## A.     Plaintiffs Fail To Allege That GEF Or GEEMF Controlled DGW

Plaintiffs' control allegations against the GEF Defendants are essentially derived from GEEMF's status as a minority shareholder and its appointment of Larrea as a member of DGW's Board.  CAC ¶¶ 45, 61, 167(b), 169.  But courts have consistently held that such allegations for control person liability are insufficient to survive a motion to dismiss.  *See, e.g.*, *Global Crossing*, 2005 WL 1907005, at \*12 (dismissing Section 15 claim against minority shareholders with the right to appoint a member to the issuer's board of directors and power to veto certain corporate actions); *see also Celestica*, 2010 WL 4159587, at \*4 (dismissing Section 20(a) claim against majority shareholder because shareholder's presence on issuer's board of directors and

---

[10] The Court need not apply heightened pleading standards to dismiss Plaintiffs' Section 15 claim. However, as set forth in DGW's Brief, heightened pleading standards are warranted where, as here, the Section 11 allegations underlying Plaintiffs' Section 15 claim sound in fraud. *See In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 493 (S.D.N.Y. 2006) ("For Section 11 violations sounding in fraud . . . the pleading requirements for the corresponding control person claim are also greater.").  For the same reasons, although the Second Circuit has not determined whether culpable participation is an element of a Section 15 claim, *Lehman*, 650 F.3d at 186, Plaintiffs should be required to plead such facts, which they have failed to do. *See Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (dismissing Section 15 claims for, *inter alia*, failure to plead culpable participation).

regular attendance at executive committee meetings failed to support a reasonable inference that shareholder had "direct day-to-day involvement in [issuer's] business affairs"); *In re Alstom SA*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005) (dismissing Section 20(a) claim because "[m]inority stock ownership and the ability to appoint a minority of the board do not create power to direct management and policies, and thus do not constitute sufficient control."); *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369, 1379 (S.D.N.Y. 1996) (dismissing Section 20(a) claim against minority shareholder whose vice president served on issuer's board).[11]  In addition, while Plaintiffs allege without any particularity that GEF "helped" DGW in the IPO process (CAC ¶ 170), the Second Circuit has clearly stated that allegations of guidance, advice, and strategic direction do not support an inference that a control person has the power "to direct" the primary violators' management or policies.  *Lehman*, 650 F.3d at 186.  None of Plaintiffs' control allegations, discussed below, allege how the GEF Defendants possessed the power *to direct* the day-to-day management of DGW, necessitating dismissal of the Section 15 claim.  *Id.*[12]

> **1.     *Appointment of member of DGW's Board of Directors.***  Plaintiffs' first control person allegation relates to GEEMF's right to appoint a member of DGW's Board prior to the Company's IPO.  CAC ¶¶ 45, 167(b).  Plaintiffs, however, critically fail to allege, as they must to support a claim of control person liability, that Larrea actually possessed the power to direct DGW's day-to-day management, let alone exercised such power.  *Global Crossing*, 2005

---

[11] The control person liability provisions of Section 20(a) of the Securities Exchange Act are "roughly parallel" to those of Section 15 of the Securities Act, *Lehman*, 650 F.3d at 185, and are "interpreted in the same manner," *Alstom*, 406 F. Supp. 2d at 487 n.49 (S.D.N.Y. 2005) (relying on cases construing the element of "control" under Section 15 and Section 20(a) interchangeably); *see also Lehman*, 650 F.3d at 185 (applying Section 20(a) definition of "control" to the interpretation of Section 15).

[12] Aside from alleging that GEEMF is an "affiliate" of GEF (CAC ¶ 45), the Complaint contains no factual allegations as to how GEF purportedly exercised control "through" its affiliate.  GEF's affiliate status is an insufficient basis from which to infer control.  *See Public Empl. Ret. Sys. of Miss.*, 714 F. Supp. at 475 (dismissing Section 15 claims against entities alleged only to be "affiliates" of the primary violator).  At a minimum, the Section 15 claim should be dismissed against GEF on this basis.

WL 1907005, at *2, *13 (dismissing Section 15 claim against minority shareholder where shareholder's appointee held powers to veto certain extraordinary corporate actions upon appointment); *see also Lehman*, 650 F.3d at 185.  Indeed, where a claim for control person liability is premised on a minority shareholder's nomination of a director to an issuer's board, a plaintiff must allege "how each director possessed the power to direct or cause the direction of the management of the primary violator" and the manner in which the minority shareholder controlled that director.  *Global Crossing*, 2005 WL 1907005, at *13; *see also LLDVF, L.P. v. Dinicola*, No. 09-128, 2010 WL 3210613, at *13 (D.N.J. Aug. 12, 2010) (citing *Global Crossing* and dismissing Section 20(a) claims against minority shareholder with right to appoint  directors on issuer's board).  Plaintiffs have done neither.

       **2.**     ***Rights to receive financial reporting and inspect facilities.***   Plaintiffs also allege that the IRA – a contract between DGW, Guo, Guo's holding company, and GEEMF, entered into in connection with GEEMF's early equity investment – provided GEEMF (or GEF through GEEMF) with the ability to "receive monthly financial reporting from DGW and premises access for inspections it sought to conduct."  CAC ¶ 169.  However, such allegations illustrate only the unremarkable fact that prior to investing millions of dollars in a then-private, foreign company, GEEMF obtained certain limited shareholder rights respecting its minority equity investment.  Mere access, however, does not amount to control person liability under Section 15.  *See Global Crossing*, 2005 WL 1907005, at *12 (dismissing Section 15 claims despite allegations that controlling shareholder had access to inside financial information).

       Notably, the Complaint does *not* allege that either GEF or GEEMF actually could direct or cause management to take action if they were dissatisfied with any financial reports or facility inspections.  Nor does the conclusory allegation that Larrea, as a Board member, was "intimately

familiar" with DGW's financials change this result.  CAC ¶ 167(b).  Familiarity with financial

information does not equate to the power to direct any action as a result of the information

obtained, and certainly not actual control of management or the Company.  *See Global Crossing*,

2005 WL 1907005, at *3 (a plaintiff must plead that the defendant had "*actual* control over the

transaction in question" (emphasis added)); *N.J. Carpenters*, 2010 WL 1257528, at *7 (plaintiffs

failed to sufficiently allege that defendants "actually had control" of the issuer).

> **3.** ***Approval rights over actions by DGW.***    Plaintiffs also allege that the IRA

provided GEEMF's Board nominee, *i.e.*, Larrea, with approval authority and veto rights over a

"variety of actions" by DGW, which are unspecified in the Complaint.  CAC ¶ 169.  Plaintiffs

further allege that GEEMF was afforded the right under the IRA to "select" a new CEO for

DGW.  *Id.*  As a threshold matter, pursuant to the IRA, GEEMF could only "nominate" – not

select – a candidate for the position of CEO.  *Id.* (quoting IRA § 5.5).[13]  In any event, Plaintiffs

do not allege that GEEMF ever exercised this right (which by the IRA's own terms is a

nomination right, not a selection right, with any nominee remaining subject to Board approval),

and more importantly, acknowledge that Guo remained Chairman and CEO of DGW "at all

relevant times."  CAC ¶¶ 41, 169 ("No one . . . was selected to replace Guo."); *see also* IRA §

5.4(b)(i).  Moreover, even Plaintiffs concede that these alleged approval rights were terminated

as of DGW's IPO.  CAC ¶ 167(b) (these rights existed "up to the time of the IPO").

---

[13] *Compare* CAC ¶ 169 ("GEEMF was afforded a 15-month period to select the CEO") *with* IRA § 5.5 ("in the event that no CEO shall have been hired within the above 15-month period [after the Closing Date], [GEEMF] shall have . . . the right . . . thereafter, to *nominate* the CEO") (emphasis added); IRA § 5.4(b)(i) (supermajority approval of the Board required for appointment of senior executive officers after 15 months of the Closing Date).  Because the IRA, which is referenced in the Complaint, "contradict[s] the allegations of the [Complaint], the [IRA] control[s] and this Court need not accept as true the allegations in the [Complaint.]"  *See Rapoport v. Asia Elec. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (dismissing Section 11, 12(a)(2), and 15 claims with prejudice against company with Chinese subsidiaries and its officers, directors, and underwriters for allegedly false statements in its IPO registration statement and prospectus).

Nevertheless, such shareholder rights in a private company, including GEEMF's conditional right to provide input in the selection of a new CEO for DGW simply does not equate to the "power to direct or cause the direction of the management and policies" of DGW. *Lehman*, 650 F.3d at 186; *Global Crossing*, 2005 WL 1907005, at *2, *13 (dismissing Section 15 claim against minority shareholders despite provision in shareholder agreement that "the affirmative votes of [the minority shareholder's appointed] board members . . . are required for a number of important business decisions," including mergers, acquisitions, and significant dispositions of assets); *see also Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989) (dismissing Section 20(a) claim where bank's exercise of lender rights under a loan agreement to direct issuer to sell certain inventory and property was insufficient to establish actual control).

       **4.**      ***"Assistance" with the IPO.*** Plaintiffs allege that GEF "helped position" DGW for its IPO and associated road show.  CAC ¶ 170.  However, such conclusory allegations are deficient because Plaintiffs fail to allege – as they must – that GEF had the power to direct management's decisions with respect to that offering.  *See Lehman*, 650 F.3d at 186 (affirming dismissal of Section 15 claim because allegations of "direct input," "advisory opinions," and "guidance" fell short of power to direct the primary violators' management and policies); *see also N.J. Carpenters*, 2010 WL 1257528, at *7 (control "is not the mere ability to persuade, but almost always means the practical ability to direct the actions of people who issue or sell securities.").  More telling, Plaintiffs fail to allege that GEF *actually* directed DGW to undertake any specific actions surrounding the IPO process, rendering any inference of control by GEF implausible.

      **B.**      **Plaintiffs Fail To Allege That GEF Or GEEMF Controlled Larrea**

       Plaintiffs also allege, in a conclusory manner, that "GEF, through GEEMF, controlled . . . Larrea."  CAC ¶ 169.  However, other than alleging that Larrea was "GEF's Board nominee at

the time of the IPO and SPO" (*id.* ¶ 167(b)), Plaintiffs fail to allege any concrete facts that Larrea acted at the direction of the GEF Defendants *in her capacity as a director of DGW*. The "power to appoint a representative to the . . . board, even combined with minority shareholder status, is insufficient to raise the inference that [the GEF Defendants] controlled [Larrea]." *Global Crossing*, 2005 WL 1907005, at *10. Additionally, Plaintiffs have failed to plead any sufficient facts that Larrea, while acting as a director of DGW, simultaneously acted as an agent of the GEF Defendants. Indeed, an employment relationship alone "does not establish power to control [the employee's] role as an independent, outside director." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 463 F. Supp. 2d 628, 642 (S.D. Tex. 2006); *see also Global Crossing*, 2005 WL 1907005, at *9 ("pleading an employment relationship is insufficient to establish agency" in employees' "capacities as directors of [issuer]"). To the contrary, courts have recognized that directors have "fiduciary duties to act on behalf of the shareholders" of the company on whose board they sit, "not on behalf of the entities that appoint them," and therefore do not act within the scope of the employment on behalf of their employers. *Global Crossing*, 2005 WL 1907005, at *3. As a result, Plaintiffs' allegations that the GEF Defendants controlled Larrea fails to state a Section 15 claim and must be dismissed.

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in DGW's Brief and the memoranda of law of the other Defendants, GEF and GEEMF respectfully request that Counts I (Section 11), II (Section 15), and III (Section 10(b)) of the Complaint asserted against them be dismissed in their entirety and with prejudice.

Dated:  November 22, 2011
       New York, New York

                                   Respectfully submitted,

                                   AKIN GUMP STRAUSS HAUER & FELD LLP

                                 /s/ Nancy Chung
                                 Nancy Chung
                                 Peter I. Altman
                                 Jacqueline G. Yecies
                                 One Bryant Park
                                 New York, NY 10036
                                 (212) 872-1000

                                 *Attorneys for Global Environment Fund and GEEMF III Holdings MU*