UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOI MING MICHAEL HO, *et al.*,

           Plaintiffs,

- against -

DUOYUAN GLOBAL WATER, INC., *et al.*,

           Defendants.

No. 10 Civ. 7233 (GBD)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
GLOBAL ENVIRONMENT FUND AND GEEMF III HOLDINGS MU'S
MOTION TO DISMISS THE CORRECTED AMENDED COMPLAINT**

AKIN GUMP STRAUSS HAUER & FELD LLP
Nancy Chung
Peter I. Altman
Jacqueline G. Yecies
One Bryant Park
New York, NY 10036
(212) 872-1000

*Attorneys for Defendants Global Environment Fund
and GEEMF III Holdings MU*

March 15, 2012

## TABLE OF CONTENTS

Page

I. THE DOCTRINE OF RESPONDEAT SUPERIOR DOES NOT SALVAGE PLAINTIFFS' SECTION 11 CLAIM ................................................................................... 1

II. JANUS MANDATES DISMISSAL OF PLAINTIFFS' SECTION 10(b) CLAIM ............. 3

III. PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM ..................................................... 5

    A. Plaintiffs Misstate the Pleading Standard Applicable to Section 15 Claims ............ 5

    B. Plaintiffs Have Not Alleged that GEF or GEEMF Controlled Larrea in her Capacity as a Director of DGW ................................................................................ 5

    C. Plaintiffs Failed to Allege that GEF or GEEMF Controlled DGW ......................... 8

CONCLUSION .................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)..................................................................................7

*Ark. Public Emp. Ret. Sys. v. GT Solar Int'l*,
  No. 08 Civ. 312, 2009 WL 3255225 (D.N.H. Oct. 7, 2009).......................................................8

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).............................................................................................................5

*In re Celestica Inc. Sec. Litig.*,
  No. 07 Civ. 312, 2010 WL 4159587 (S.D.N.Y. Oct., 14, 2010) ...........................................4, 9

*City of Roseville Emp. Ret. Sys. v. EnergySolutions, Inc.*,
  No. 09 Civ. 8633, 2011 WL 4527328 (S.D.N.Y. Sept. 30, 2011).............................................4

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00 Civ. 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ................................................2

*In re Global Crossing Sec. Litig.* (*Global Crossing I*), No. 02 Civ. 910,
  2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)..................................................................2, 3, 10

*In re Global Crossing Sec. Litig.* (*Global Crossing III*), No. 02 Civ. 910, 2005 WL
  2990646 (S.D.N.Y. Nov. 7, 2005) ............................................................................................3

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011)...........................................................................................................3, 4

*Kleban v. S.Y.S. Rest. Mgmt., Inc.*,
  929 F. Supp. 294 (N.D. Ill. 1996) .............................................................................................6

*Kolbeck v. LIT Am., Inc.*,
  923 F. Supp. 557 (S.D.N.Y. 1996) ...........................................................................................3

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
  650 F.3d 167 (2d Cir. 2011).................................................................................................9, 10

*In re Motel 6 Sec. Litig.*,
  161 F. Supp. 2d 227 (S.D.N.Y. 2001).......................................................................................9

*In re Musicmaker.com Sec. Litig.*,
  No. CV00-2018, 2001 WL 34062431 (C.D. Cal. June 4, 2001) ...............................................8

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, No. 10-4702-cv, 2011 WL 6823204 (2d
　　Cir. Dec. 29, 2011) .................................................................................................................. 4

*In re Optimal U.S. Sec. Litig.*,
　　No. 10 Civ. 4095, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ............................................. 4

*Seghers v. Thompson*,
　　No. 06 Civ. 308, 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006) .............................................. 2

*Skeen v. Jo-Ann Stores, Inc*,
　　750 A.2d 1170 (Del. 2000) ..................................................................................................... 2

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*,
　　941 F. Supp. 1369 (S.D.N.Y. 1996) ........................................................................................ 7

*Southwick Clothing LLC v. GFT (USA) Corp.*,
　　No. 99 Civ. 10452, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) .................................. 1, 5, 7

*U.S. Airways Grp., Inc. v. British Airways PLC*,
　　989 F. Supp. 482 (S.D.N.Y. 1997) .......................................................................................... 2

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................................. 3

Fed. R. Civ. P. 9(b) ........................................................................................................................ 3

Ignoring the controlling statutes and case law advanced by the GEF Defendants in their Moving Brief, Plaintiffs' claims have largely devolved into a single unpleaded theory – raised for the first time in their Opposition – that both GEF and GEEMF are liable for *all* actions taken by Defendant Joan Larrea, including those taken as an independent director on the Board of Directors of DGW, under the doctrine of respondeat superior.[1]  This argument, however, disregards one of the most basic principles of agency law:  *an employer is only liable for the acts of its employee within the scope of her employment*.  Plaintiffs have not alleged *any* specific facts to establish that Larrea's activities as a director of DGW were performed in an "agency" capacity on behalf of GEEMF or GEF, or that GEEMF or GEF directed or controlled her conduct on the Board.  This failure alone requires dismissal of Plaintiffs' Section 10(b) and 11 claims and their Section 15 claim based on the GEF Defendants' alleged control over Larrea.  Moreover, Plaintiffs cannot take this case out of the ambit of *Global Crossing I*, a Southern District decision that dismissed Section 10(b), 11, and 15 claims virtually identical to those presented here.

## I. THE DOCTRINE OF RESPONDEAT SUPERIOR DOES NOT SALVAGE PLAINTIFFS' SECTION 11 CLAIM

Plaintiffs concede that neither GEF nor GEEMF fall within any of the statutorily enumerated parties subject to suit under Section 11.  Moving Br. at 12-13.  Recognizing this fatal defect, Plaintiffs attempt to manufacture an end-run around Section 11 via an expansive and unpleaded theory of respondeat superior.[2]  Opp'n at 12-13.  Plaintiffs ask this Court to presume that because Larrea is alleged to have been both (1) GEEMF's appointee to the DGW Board, and (2) GEF's employee, she was therefore acting as GEF and GEEMF's "agent" in fulfilling her

---

[1] Capitalized terms not defined herein are used as defined in the Moving Brief filed by GEF and GEEMF.
[2] It is well established that "a complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion." *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) (Daniels, J.).

duties on the DGW Board.[3]  This conclusory analysis – which ignores Section 11's explicit limitation to specific statutorily enumerated parties – has been rejected consistently.

It is black letter law that "[n]ot all actions of an employee are attributable to a corporate employer – the employer is only responsible for its employee's actions that were within the scope of [her] employment." *In re Global Crossing Sec. Litig.* (*Global Crossing I*), No. 02 Civ. 910, 2005 WL 1907005, at *4 (S.D.N.Y. Aug. 8, 2005); *see also U.S. Airways Grp., Inc. v. British Airways PLC*, 989 F. Supp. 482, 494 (S.D.N.Y. 1997) (shareholder not liable under respondeat superior for conduct of employees in their capacities as board members of separate corporation).  Moreover, directors are "fiduciaries who owe duties of due care, good faith and loyalty to the company and its stockholders." *Skeen v. Jo-Ann Stores, Inc*, 750 A.2d 1170, 1172 (Del. 2000); *see also Seghers v. Thompson*, No. 06 Civ. 308, 2006 WL 2807203, at *7 (S.D.N.Y. Sept. 27, 2006) (same applying British Virgin Islands law); Outside Director Defs.' Reply at 8 n.7.  Thus, in her capacity as a director of DGW, Larrea assumed personal, non-delegable and indivisible fiduciary duties towards DGW and *all* its shareholders – not to GEF or GEEMF.  She therefore "cannot be presumed to have been acting at the direction of" GEF or GEEMF while acting in her capacity as a director of DGW.  *Global Crossing I*, 2005 WL 1907005, at *4; *see also U.S. Airways*, 989 F. Supp. at 494.

Nor can such direction or control "simply be alleged in conclusory fashion." *Global Crossing I*, 2005 WL 1907005, at *4; *see also In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002).  To carry their pleading burden, Plaintiffs must specifically plead "concrete factual allegations" to suggest that when Larrea signed the Offering Documents, she was acting *within the scope of her alleged employment with*

---

[3] In the CAC, Larrea is alleged to have been employed only by "affiliate" of GEF.  CAC ¶ 45.

2

*GEF*.[4]  *Global Crossing I*, 2005 WL 1907005, at *9-10; *see also In re Global Crossing Sec. Litig.* (*Global Crossing III*), No. 02 Civ. 910, 2005 WL 2990646, at *5-6 (S.D.N.Y. Nov. 7, 2005). Merely "pleading an employment relationship" between a minority shareholder and its board nominee, as Plaintiffs attempt here, is "insufficient to establish agency between" the GEF Defendants and Larrea "in [her] capacit[y] as director[] of an independent corporation." *Global Crossing I*, 2005 WL 1907005, at *9.  The CAC contains *no* specific allegations supporting Plaintiffs' new theory of respondeat superior.  To the contrary, the registration statements make clear that Larrea signed them as a "*Director*" of DGW – not on behalf of GEF or GEEMF. Declaration of Robin B. Howald in Opposition to DGW's Motion to Dismiss, Ex. F: IPO Registration Statement, at II-4.  This precludes any argument that GEF and GEEMF are liable under Section 11 for DGW's Offering Documents.

To be sure, Plaintiffs cite no case – Section 11 or otherwise – where a company was held liable on a theory of respondeat superior for the actions of an employee in her capacity as an independent director of a different company.  In *Global Crossing III*, a case cited by Plaintiffs, Judge Lynch *dismissed* both Section 11 and 10(b) claims premised on this exact legal theory. *Global Crossing III*, 2005 WL 2990646, at *5-6.  Plaintiffs' "novel and expansive applications of respondeat superior" in the securities context should be rejected, and their Section 11 claim against the GEF Defendants must therefore be dismissed.  *Id.* at *6.

## II. *JANUS* MANDATES DISMISSAL OF PLAINTIFFS' SECTION 10(b) CLAIM

Plaintiffs similarly do not – because they cannot – argue that either GEF or GEEMF "made" any of the alleged misstatements in the Offering Documents as required by controlling Supreme Court precedent.  Moving Br. at 5 (citing *Janus Capital Grp., Inc. v. First Derivative*

---

[4] Plaintiffs' allegations fail to meet the requirements of Fed. R. Civ. P. 8, let alone the particularity requirements of Rule 9(b), which would apply where the agency relationship is alleged as part of a fraud claim.  *See Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996).

3

*Traders*, 131 S. Ct. 2296, 2302 (2011)).[5]  Plaintiffs argue instead that the alleged misstatements should be attributed to GEF and GEEMF based on "indicia of control" that were "implicit in the surrounding circumstances" of the IPO and SPO.  Opp'n at 15.  This theory of attribution finds no support in the case law given Plaintiffs' scant control allegations in the CAC.

In the sole case cited by Plaintiffs in support of this argument, Judge Koeltl attributed the issuer's statements to a pre-IPO *100%* shareholder that retained "the ability to control all matters requiring stockholder approval" after the IPO, including "the determination of the outcome of any corporate transaction."  *City of Roseville Emp. Ret. Sys. v. EnergySolutions, Inc.*, No. 09 Civ. 8633, 2011 WL 4527328, at *17 (S.D.N.Y. Sept. 30, 2011) (emphasis added).  Plaintiffs' control allegations here are entirely distinguishable from those at issue in *EnergySolutions*.  As a result of its *minority* equity investment in DGW, GEEMF allegedly acquired limited shareholder rights that *terminated* as of the IPO.  *See* Moving Br. at 2-3; Opp'n at 4.  Moreover, other courts have dismissed 10(b) claims based on allegations similar to those in *EnergySolutions* (and thus far more substantial than those present here).  *See In re Optimal U.S. Sec. Litig.*, No. 10 Civ. 4095, 2011 WL 4908745, at *4-5 (S.D.N.Y. Oct. 14, 2011) (declining to attribute statements to a 100% shareholder with the right to "appoint and remove [the issuer's] directors at will").

Unable to distinguish *Janus*, Plaintiffs again resort to a theory of respondeat superior in a last ditch attempt to save their Section 10(b) claims.  This argument fails for the same reasons it failed in the Section 11 context:  Plaintiffs have pled no facts suggesting that Larrea operated as

---

[5] Incredibly, Plaintiffs fail to address *Celestica*, in which this Court dismissed 10(b) claims against a controlling shareholder alleged neither to have "made" nor had "any role in the preparation, issuance or dissemination" of the misstatements.  *In re Celestica Inc. Sec. Litig.*, No. 07 Civ. 312, 2010 WL 4159587, at *4 (S.D.N.Y. Oct., 14, 2010) (Daniels, J.), *rev'd on other grounds sub nom. New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, No. 10-4702-cv, 2011 WL 6823204 (2d Cir. Dec. 29, 2011).

the agent of GEF or GEEMF *in her capacity as a director of DGW*. *See supra* at 1-3.[6]

### III.  PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM

#### A.  Plaintiffs Misstate the Pleading Standard Applicable to Section 15 Claims

Plaintiffs assert that they need only plead allegations sufficient to show that "it is not implausible that plaintiffs could develop a record that could support a finding of control." Opp'n at 6. That is not the law. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted) (emphasis added). Courts therefore routinely dismiss control person claims where, as here, the complaint fails to raise a plausible inference of control. *See* Moving Br. at 13-19.

#### B.  Plaintiffs Have Not Alleged that GEF or GEEMF Controlled Larrea in her Capacity as a Director of DGW

According to Plaintiffs, Larrea was "necessarily" controlled by GEF and GEEMF in her capacity as a DGW director because she is alleged to have been both (1) an employee of GEF, and (2) GEEMF's appointee to the DGW Board. Opp'n at 7. This argument is based on the same false premise underlying Plaintiffs' failed respondeat superior arguments: the conclusory assertion that *all* of Larrea's actions – including those taken in her capacity as an independent board member of an entirely different company – were within the scope of her alleged employment with GEF. *See supra* at 1-3. Plaintiffs' remaining arguments rely exclusively on limited pre-IPO rights possessed by *GEEMF* – and thus could have no possible bearing on whether GEF and GEEMF controlled Larrea in her capacity as a director of DGW.

---

[6] Despite the CAC's clear and express limitation of their 10(b) claim to the IPO, CAC ¶ 174, Plaintiffs now argue that this limitation was "inadvertent" and was meant to apply to the SPO. Plaintiffs may not amend their pleading by way of an opposition brief. *See Southwick*, 2004 WL 2914093, at *6. In any event, apart from the standing deficiencies set forth in DGW's briefs, Plaintiffs have not sufficiently pled GEF's or GEEMF's scienter as to the SPO. *See* Moving Brief at 9 n.8.

5

### *1.   Larrea "Executed the IRA" and "Exercised GEF's Veto Power."*

Plaintiffs attach great significance to their allegation that Larrea "executed the IRA on behalf of GEEMF, in her capacity as a '*Managing Director of GEF*.'"  Opp'n at 7 (emphasis added).  This allegation, however, provides no support for Plaintiffs' Section 15 claim because while executing the IRA – an alleged event that *pre-dated* her nomination to the DGW Board – Larrea was expressly acting solely on behalf of the GEF Defendants, *not* in her capacity as a *DGW director*. *See* Declaration of Robin B. Howald in Opposition to GEF Defendants' Motion to Dismiss ("Howald Decl.") Ex. D: Investor Rights Agreement ("IRA") at 27.  Plaintiffs similarly rely on their allegation that Larrea "exercised GEF's veto power" under the IRA as further support for their Section 15 claim.  CAC ¶ 167(b).  This is another red herring:  as expressly stated in both the CAC and IRA, these alleged veto rights belonged to *GEEMF*.  Accordingly, neither allegation creates a plausible inference that GEF and/or GEEMF controlled Larrea *in her capacity as a Board member*.  Moreover, as discussed *infra*, such veto rights – which are not alleged to have ever been exercised – are insufficient to establish GEF or GEEMF's control over DGW.  *See Kleban v. S.Y.S. Rest. Mgmt., Inc.*, 929 F. Supp. 294, 301 (N.D. Ill. 1996) ("[D]efendants' ability to veto [certain decisions] does not imply that [defendants] had the power to control the fraudulent actions taken by [primary violators].").

### *2.   Responsibility for "Monitoring GEF's Interest."*

Plaintiffs stretch to attach significance to the IRA's notice provisions, in which Plaintiffs allege Larrea is designated as "GEF's representative to receive information."  Opp'n at 7.  Again, the right to receive notices and information under the IRA belonged to *GEEMF*.  Critically, Plaintiffs *do not* allege that Larrea, while voting or otherwise performing her *directorial* duties on behalf of DGW, took direction from either GEF or GEEMF based on any such information. Larrea's alleged receipt of

6

information on behalf of GEF thus provides no support for Plaintiffs' conclusory arguments that GEF could, in turn, direct Larrea's actions *in her capacity as a director of DGW*.

    **3.**   ***Implementation of "GEF's Corporate Strategy."***  Plaintiffs next assert that Larrea "implemented GEF's corporate strategy that led to the IPO." Opp'n at 8 (citing CAC ¶ 170). But Plaintiffs' citation to ¶ 170 contains no reference to Larrea at all, let alone any allegations that GEF directed Larrea in her capacity as a director of DGW in relation to the IPO. Likewise, the GEF Investor Report, Howald Decl. Ex. B,[7] which briefly describes GEF's investment in DGW and which Plaintiffs also cite, contains no mention of Larrea and thus cannot plausibly support this theory of control. Plaintiffs also allege that Larrea, as a director of DGW, signed various public filings relating to the SPO. But Plaintiffs *do not* allege, or even attempt to argue, that Larrea signed these SPO documents *at the direction of GEF or GEEMF*, or that those entities even had the power to direct her to sign them. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) ("[D]efendant must not only have actual control over the primary violator, but have actual control over the transaction in question.").

  Finally, to the extent that Plaintiffs allege that GEF and GEEMF controlled DGW *indirectly* via their Board appointee, this theory fails on multiple levels. First, as already discussed at length, Plaintiffs have alleged no facts suggesting that GEF or GEEMF controlled Larrea *in her capacity as a director of DGW*. *See supra* at 1-3. And second, aside from conclusory statements, Plaintiffs have pled no specific facts suggesting that Larrea controlled DGW as an independent director. *See Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996) ("[D]irector status alone does not establish control person liability."); *see also* Outside Director Defs.' Moving Br. at 5-8.

---

[7] The additional exhibits attached to the Opposition, which are not part of the CAC, cannot properly be considered by this Court on a motion to dismiss. *See Southwick*, 2011 WL 4056310, at *6. The sole exception is the IRA, which is incorporated by reference in the CAC.

7

### C. Plaintiffs Failed to Allege that GEF or GEEMF Controlled DGW

Plaintiffs' attempt to allege that GEF and GEEMF controlled DGW directly is equally unavailing. As discussed in the Moving Brief, minority shareholder status – even combined with the right to appoint a minority of directors – does not establish control. Moving Br. at 14-15.[8] GEEMF's alleged IRA rights and GEF's alleged involvement in the IPO do not alter the fact that neither entity is alleged to have had the power to direct DGW's day-to-day management and policies as a matter of law.

*1.* ***GEEMF's IRA Rights.*** As a threshold matter, the alleged limited pre-IPO rights granted under the IRA – on which Plaintiffs rely heavily in support of their control person liability arguments – were divided between *two* distinct parties: the "Investor," *i.e.*, GEEMF; and the "Investor Director," *i.e.*, Larrea, GEEMF's appointee to the DGW Board. IRA §§ 5.3, 5.4. Plaintiffs gloss over this critical distinction in their Opposition, as they repeatedly conflate these rights as if GEEMF and Larrea were a single entity. They are not. Absent specific factual allegations that Larrea's conduct as a DGW Board member fell within the scope of her alleged employment with GEF (and there are none), her directorial duties and rights – *including rights relating to annual budgets, annual reports, and accounting methods* – cannot be attributed to GEEMF, let alone its affiliate GEF.[9] *See supra* at 1-3.

As set forth in the Moving Brief (16-17), the right to receive information does not equate to the power to *direct or control* day-to-day management. Plaintiffs' similar allegations relating

---

[8] The few cases cited by Plaintiffs from other circuits are inapposite. *Musicmaker* involved a pre-IPO majority shareholder that "exercise[d] significant control over all matters requiring stockholder approval" after the IPO. *See In re Musicmaker.com Sec. Litig.*, No. CV00-2018, 2001 WL 34062431, at *4, *17 (C.D. Cal. June 4, 2001). Likewise, the investor in *GT Solar* owned 99.9% of the issuer's voting stock, and the court relied on the fact that "[t]he funds d[id] not argue that the complaint fails to allege that they controlled the directors [as opposed to the issuer]." *Ark. Public Emp. Ret. Sys. v. GT Solar Int'l*, No. 08 Civ. 312, 2009 WL 3255225, at *5, 12 (D.N.H. Oct. 7, 2009). That is not the case here.

[9] Plaintiffs' have not come close to alleging control over DGW by *GEF*, which was not a shareholder of DGW and thus had no rights whatsoever under the IRA. *See* Moving Br. at 15 n.12.

to GEEMF's rights to "inspect" DGW facilities and "discuss" the Company's finances are equally misguided. Opp'n at 9. The rights to "inspect" and "discuss" as a minority investor fall far short of the power to *direct or control*. Plaintiffs *do not* allege that as a result of these inspections or discussions, GEEMF could direct DGW to make any changes to its daily management or policies. *See Celestica*, 2010 WL 4159587, at *4 (dismissing control person claim against majority shareholder where allegations failed to support a reasonable inference that shareholder had "direct day-to-day involvement in [issuer's] business affairs").

Similarly, GEEMF's alleged limited – and unexercised – pre-IPO right to nominate a CEO in the event that DGW did not appoint one within a specified time period does not establish control. Plaintiffs' assertion that there is no material difference between "appointment" and "nomination" rights ring hollow. *See* Opp'n at 10. The IRA unambiguously states that GEEMF did *not* have the right to unilaterally "appoint" a CEO. Moving Br. at 17-18; IRA § 5.5. GEEMF was far from the ultimate decision-maker – that responsibility belonged to the Board. GEEMF could only *suggest* potential candidates who would still need the supermajority approval of the Board prior to appointment. As such, GEEMF's alleged "nomination" rights do not plausibly suggest the power to direct DGW's daily management and policies. *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011) (allegations of advice, guidance, and "strategic direction . . . fail to raise a reasonable inference that the [defendants] had the power to *direct*, rather than merely inform, the [issuers'] ultimate . . . decisions"); *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 238 (S.D.N.Y. 2001) ("Control is not the same as influence; a 'control person' must have some enforceable power over the primary violator.").[10]

---

[10] Plaintiffs even acknowledge that virtually all of GEEMF's rights under the IRA, including rights regarding nomination and other corporate actions, terminated upon the IPO. *See* Opp'n at 4; IRA § 5.8.

       **2.**    ***IPO Involvement.***  Finally, Plaintiffs repeatedly argue that "GEF designed the strategy that led to the IPO and took credit for its successful execution."[11] Opp'n at 10. Notably absent, however, is any assertion that either GEF or GEEMF had the *power to direct* DGW's actions with respect to the IPO.[12] Moving Br. at 18. Without such allegations, this argument amounts, at best, to nothing more than that GEF or GEEMF "provid[ed] advice that [DGW] chose to follow," and is insufficient to plead control. *Lehman*, 650 F.3d at 187.

      None of Plaintiffs' arguments take this case outside the facts of *Global Crossing I*, which is directly on point and vitiates any plausible inference of control. There, Judge Lynch dismissed Section 15 claims against minority shareholders of the issuer despite allegations that: (1) the defendants appointed directors to the issuer's board of directors; (2) the directors had "access to insider information concerning . . . financials and business plans"; (3) the defendants were "prominently featured in [the issuer's] business plans"; and (4) "the affirmative votes of [the defendants'] officer-designees to the board were required for a number of important business decisions." *Global Crossing I*, 2005 WL 1907005, at *6 (internal quotations omitted). This case has not been – and cannot be – meaningfully distinguished by Plaintiffs, rendering Plaintiffs' control person allegations insufficient to state a claim against either GEF or GEEMF.

## **CONCLUSION**

      For all of the foregoing reasons, and the reasons set forth in the Moving Brief, and the briefs of DGW and the other Defendants, GEF and GEEMF respectfully request that all claims asserted against them be dismissed in their entirety and with prejudice.

---

[11] Even if the documents Plaintiffs append to their Opposition were properly before the Court, they in no way indicate that GEF/GEEMF had the power to direct the day-to-day management and policies of DGW.
[12] Plaintiffs' allegation that GEF/GEEMF "had the right to demand registration and sale of its ADSs" after the IPO similarly lacks merit. *See* Opp'n at 10. That GEEMF could require the sale of its shares in DGW after the IPO is at best a narrow and limited right that falls well short of the power to direct the day-to-day management and policies of DGW. *Global Crossing I*, 2005 WL 1907005, at *13. Likewise, there is no allegation in the CAC that GEF "caused" the SPO, as Plaintiffs now suggest.

Dated: March 15, 2012
New York, New York

                                      Respectfully submitted,

                                      AKIN GUMP STRAUSS HAUER & FELD LLP

                                      /s/ Nancy Chung
                                      Nancy Chung
                                      Peter I. Altman
                                      Jacqueline G. Yecies
                                      One Bryant Park
                                      New York, NY 10036
                                      (212) 872-1000

                                      *Attorneys for Global Environment Fund and GEEMF III Holdings MU*