UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
HOI MING MICHAEL HO, *et al.*,                                 :
                                                               :
    Plaintiffs,                                                : ECF Case
                                                               :
    v.                                                          : Civil Action No.: 1:10-cv-07233-
                                                               : GBD
DUOYUAN GLOBAL WATER, INC., *et al.*,                          :
                                                               :
    Defendants.                                                 :
                                                               :
-------------------------------------------------------------- x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# GRANT THORNTON INTERNATIONAL LTD'S MOTION TO DISMISS


                                                        WILLKIE FARR & GALLAGHER LLP

                                                        787 Seventh Avenue
                                                        New York, New York 10019

                                                        Attorneys for Defendant
                                                        Grant Thornton International Ltd

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I. THE COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM. .............................. 2

    A. The Complaint Does Not Identify Any Misstatement By GTIL. ........................... 2

    B. The Complaint Does Not Allege Scienter As To GTIL. ........................................ 7

II. THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM AGAINST GTIL. ...................................................................................................................................... 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**            **Page(s)**

*Adair v. Kaye Kotts Assocs., Inc.*,
No. 97 CIV. 3375, 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) .................................................. 8

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010) .......................................................................................... 7

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) .......................................................................................... 6

*In re Asia Pulp & Paper Sec. Litig.*,
293 F. Supp. 2d 391 (S.D.N.Y. 2003) ...................................................................................... 4, 6

*In re Bausch & Lomb, Inc. Sec. Litig.*,
592 F. Supp. 2d 323 (W.D.N.Y. 2008) ........................................................................................ 7

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011) .......................................................................................... 7

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ........................................................................................................ 7

*City of Roseville Emps.' Ret. Sys. v. Energysolutions, Inc.*,
No. 09 Civ. 8633, 2011 WL 4527328 (S.D.N.Y. Sept. 30, 2011) ............................................... 5

*In re Elan Corp. Sec. Litig.*,
No. 02 Civ. 865, 2004 WL 1305845 (S.D.N.Y. May 18, 2004) .................................................. 8

*Glickman v. Alexander & Alexander Servs., Inc.*,
No. 93 Civ. 7594, 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996) .................................................... 7

*Hawaii Ironworkers Annuity Trust Fund v. Cole*,
No. 3:10 CV 371, 2011 WL 3862206 (N.D. Ohio Sept. 1, 2011) ............................................... 7

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ....................................................................................................... 8

*Janus Capital Grp., Inc. v. First Derivative Traders*,
131 S. Ct. 2296 (2011) ........................................................................................................ passim

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
650 F.3d 167 (2d Cir. 2011) ........................................................................................................ 8

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) .................................................................................................... 6, 7

*In re Lernout & Hauspie Sec. Litig.*,
   230 F. Supp. 2d 152 (D. Mass. 2002) ..................................................................................4

*Munoz v. China Expert Tech., Inc.*,
   No. 07 Civ. 10531, slip op. (S.D.N.Y. Nov. 7, 2011) ..........................................................5

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
   No. 03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ............................................6

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005) ..............................................................................3, 7

*In re Parmalat Sec. Litig.*,
   377 F. Supp. 2d 390 (S.D.N.Y. 2005) ..................................................................................9

*In re Parmalat Sec. Litig.*,
   640 F. Supp. 2d 243 (S.D.N.Y. 2009) ..................................................................................3

*In re Pfizer Inc. Sec. Litig.*,
   584 F. Supp. 2d 621 (S.D.N.Y. 2008) ..................................................................................6

*In re Refco, Inc. Sec. Litig.*,
   No. 05 Civ. 8628, 2008 WL 3843343 (S.D.N.Y. Aug. 14, 2008) ........................................8

*SEC v. Boock*,
   No. 09 Civ. 8261, 2011 WL 5417106 (S.D.N.Y. Nov. 9, 2011) ......................................6, 7

*SEC v. Landberg*,
   No. 11 Civ. 0404, 2011 WL 5116512 (S.D.N.Y. Oct. 26, 2011) ..........................................5

*SEC v. Lee*,
   720 F. Supp. 2d 305 (S.D.N.Y. 2010) ..................................................................................6

*Star Energy Corp. v. RSM Top-Audit*,
   No. 08 Civ. 00329, 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008) ...................................4, 6

*TCS Capital Mgmt., LLC v. Apax Partners, L.P.*,
   No. 06-CV-13447, 2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) ............................................6

Defendant Grant Thornton International Ltd ("GTIL") respectfully submits this reply brief in further support of its motion to dismiss.

## PRELIMINARY STATEMENT

The thrust of plaintiffs' opposition brief is that GTIL can be liable here even though it did not audit DGW's financial statements and, in fact, had nothing to do with DGW. That is, plaintiffs concede that GTIL is not an accounting firm, is not licensed to do audits anywhere in the world, and does not issue audit reports. Faced with that brick wall, plaintiffs basically abandon any claim that GTIL was involved in the DGW financial statement audits. But they insist that none of this matters because the DGW audit opinions were signed "Grant Thornton" and "everyone" supposedly "understood that Grant Thornton means" GTIL.[1]

No one understood anything of the kind. DGW's SEC filings on their face identified "Grant Thornton/Hong Kong" as the auditor and stated that "GT Hong Kong was engaged to audit the Company's financial statements" – without any mention of GTIL.[2] GTIL was equally explicit that GTIL is "a non-practicing, international umbrella entity," that it "does not deliver services in its own name or otherwise," and that all "[s]ervices are delivered independently by the member and correspondent firms."[3] Nothing attributed the audits at issue to GTIL.

But there is a more fundamental problem with plaintiffs' opposition. At root, plaintiffs are trying to keep GTIL in the case based on the proposition – which, in truth, is all they have – that GTIL and auditor Grant Thornton Hong Kong have similar names. The problem with this approach is that *lots* of companies – particularly affiliates – have similar names. But

---

[1] Plaintiffs' Opposition Brief ("Opp.") at 2.
[2] *See* GTIL's Opening Brief ("Opening Br.") at 4.
[3] Opening Br. at 2-3; November 22, 2011 Declaration of Michael R. Young ("Young Decl.") Ex. 2 (GTIL's website).


that does not mean they are the same legal entity or responsible for the conduct of one another. The issue is not whether two companies have similar names but which of the companies performed the acts alleged to constitute misconduct. As to GTIL, no misconduct is alleged.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM.

#### A. The Complaint Does Not Identify Any Misstatement By GTIL.

Plaintiffs do not dispute that the Supreme Court's *Janus* decision controls their section 10(b) claim against GTIL and limits liability to those who "make" misstatements.[4] *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301-02 (2011). Nevertheless, plaintiffs argue that GTIL can be liable for supposed misstatements in Grant Thornton Hong Kong's audit opinions because GTIL "controlled" that firm and because the audit opinions were "attributed" to GTIL.[5]

Both arguments fail. For starters, plaintiffs' assertion that GTIL "controlled" Grant Thornton Hong Kong misses the point. After *Janus*, it is control over the alleged *misstatement* that matters, not control of the speaker. As the Supreme Court put it, what is required is "ultimate authority *over the statement*, including its content and whether and how to communicate it." *Id.* at 2302 (emphasis added). For that reason, the Supreme Court held that Janus Capital Management could not be sued for a Janus Investment Fund prospectus even though it ran the fund. *See id.* at 2299, 2305. Comparing Janus Capital Management to a "speechwriter" and the fund to a "speaker," the Supreme Court held that the prospectus was "subject to the ultimate control of" Janus Investment Fund alone, making the fund the only potentially liable party. *See id.* at 2305. In our opening brief, we made the point that nothing in

---

[4] Opp. at 12.

[5] Opp. at 12.

the complaint shows GTIL's control over the DGW audit reports. Plaintiffs leave the point completely unaddressed.

But plaintiffs' "control" argument fails even beyond that. The theory that GTIL "controlled" Grant Thornton Hong Kong, aside from its legal irrelevance under *Janus*, is based exclusively on "facts" supposedly found in *In re Parmalat Sec. Litig.*, 640 F. Supp. 2d 243 (S.D.N.Y. 2009).[6] Plaintiffs cite *Parmalat* for requirements supposedly imposed by GTIL on its member firms – an "airtight member agreement," "uniform standards," "an exacting 200-page audit manual," and the like.[7] Plaintiffs then contend that the *Parmalat* court "held that GTI firmly controlled its member firms" based on those factors, which shows control by GTIL here.[8]

None of this has anything to do with GTIL. *Parmalat* involved Grant Thornton International, a U.S.-based "non-profit corporation organized under Illinois law" that, from 1999 through 2003, allegedly participated in the *Parmalat* fraud. *Parmalat*, 640 F. Supp. 2d at 246; *see also In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 288 (S.D.N.Y. 2005). GTIL is a *different* entity which was incorporated in England and Wales more than a year later, in 2005.[9] As such, the "facts" of *Parmalat* have no bearing on the legal liability of GTIL.

Plaintiffs' "attribution" arguments are just as flawed. The main argument is that the "Grant Thornton" signature on DGW's audit reports shows attribution to GTIL, apparently because "Grant Thornton" appears in both GTIL's and Grant Thornton Hong Kong's names.[10]

---

[6]     Opp. at 12-13.

[7]     Opp. at 12.

[8]     Opp. at 12.

[9]     *See* Opening Br. at 2-3; Companies House, England and Wales Company Registration for Grant Thornton International Limited, http://wck2.companieshouse.gov.uk/e23eafed8916c44542fcacd67c348fbc/compdetails (last visited Mar. 15, 2012).

[10]    Opp. at 9-10, 13. Plaintiffs separately argue that the "Grant Thornton" signature on DGW's audit opinions constitutes attribution to GTIL and not Grant Thornton Hong Kong because the words "Grant Thornton" are capitalized in the audit opinions while the words "Hong Kong" appear only with initial capital letters.

But legal liability cannot be shifted from one legal entity to another simply because of similar names. Indeed, the Supreme Court declined to find attribution in *Janus* even though the companies there – affiliated "Janus" entities – had comparably similar names. *Janus*, 131 S. Ct. at 2305. The same was true even before *Janus*. Thus, in *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003), the court declined to impose liability on the former Arthur Andersen umbrella entity based on audits by Arthur Andersen Singapore notwithstanding that they had similar names. In *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 171 (D. Mass. 2002), the court declined to impose liability on the KPMG umbrella entity based on audits by KPMG Belgium notwithstanding that they had similar names. And in *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008), the court declined to impose liability on the RSM umbrella entity based on audits by RSM Russia notwithstanding that they had similar names too.

Plaintiffs likewise get nowhere by arguing that there was attribution to GTIL because Grant Thornton Hong Kong is a "national firm" and DGW (not GTIL or Grant Thornton Hong Kong) referred to its auditor in two September 2010 press releases as "Grant Thornton, an international accounting firm."[11] Without delving into what distinguishes a "national" firm from an "international" firm, plaintiffs concede that GTIL is not an accounting firm of any sort, that Grant Thornton Hong Kong was an accounting firm, and that its legal name was "Grant

---

(*Id.* at 9 n.11.) But plaintiffs cite nothing to support the assertion that securities liability turns on typeface. The same holds for plaintiffs' observation that "Grant Thornton" is hand-written in a June 2009 DGW Form S-8 while "Hong Kong" is typed – before even getting to the fact that that particular SEC filing is not even at issue here. (*Id.* at 13.)

[11] Opp. at 9-10. Plaintiffs base this argument on GTIL's website, while arguing that GTIL's references to the website are inappropriate because GTIL cites the current version rather than the website as it existed when DGW sold shares to the public in 2009 through 2011. (*Id.* at 10 n.13.) The short answer is that the excerpts to which we referred have not changed since 2009. (*Compare* Young Decl. Ex. 2 (GTIL's web page) *with* GTIL's 2009 web page (Jan. 22, 2009), http://web.archive.org/web/20090122152420/http://www.gti.org/Contact-us/Disclaimer.asp).

Thornton"[12] – all of which shows that DGW plainly was not referring to GTIL. At any rate, these statements were not made by GTIL and were not even made by DGW until well after the audit reports at issue.[13]

Nor do the cases cited by plaintiffs lead to a different conclusion. None sustained a section 10(b) claim against an entity (like GTIL) with no involvement in the alleged misstatements. In plaintiffs' main case, *Munoz v. China Expert Tech., Inc.*, No. 07 Civ. 10531, slip op. (S.D.N.Y. Nov. 7, 2011), the court declined to dismiss securities claims against the New York affiliate of a Chinese accounting firm based on facts showing that the New York firm actually "exercised authority over what was said in the audit opinion" and otherwise "participate[d] in the audits" at issue. *Id.* at 2. And, in plaintiffs' other cases, the defendants either actually made misstatements or there were facts showing control over misstatements.[14] None of that is present here.

As a back-up, plaintiffs argue agency. That is, plaintiffs assert that GTIL is liable for member firm misstatements because it was "acting through its agent member firms."[15] But plaintiffs have no response to the point, spelled out in our opening brief, that such claims can only be brought as section 20 "control person" claims after *Janus*.[16] Nor do plaintiffs have any real response to the point that, even before *Janus*, courts (including this Court) required agency-

---

[12] *See* Opening Br. at 3-5.

[13] The SEC filings under attack were made in June 2009, January 2010, and June 2010. The press releases plaintiffs rely upon here were not issued until September 2010. *See* Opp. at 7, 8-9.

[14] *See City of Roseville Emps.' Ret. Sys. v. Energysolutions, Inc.*, No. 09 Civ. 8633, 2011 WL 4527328, at *17-18 (S.D.N.Y. Sept. 30, 2011) (selling shareholder defendant had "ultimate authority" over the challenged offering documents, "direct control over all corporate transactions" to which the documents related, and was identified in those documents); *SEC v. Landberg*, No. 11 Civ. 0404, 2011 WL 5116512, at *2 (S.D.N.Y. Oct. 26, 2011) (denying CFO's motion to dismiss because he actually "generated fraudulent account statements and other marketing materials that misrepresented . . . financial performance").

[15] Opp. at 7; *see also* Opp. at 16.

[16] *See* Opening Br. at 9.

based claims against accounting umbrella organizations to be based on facts showing control of the specific audit at issue, none of which are alleged here. *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *5 (S.D.N.Y. Jan. 22, 2004) (Daniels, J.); *see also Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919, at *3-4 (S.D.N.Y. Nov. 26, 2008); *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003).[17]

As a further back-up, plaintiffs argue that the complaint states a "scheme liability" claim against GTIL under Rule 10b-5(a) and (c).[18] But the complaint is explicit that the section 10(b) allegations "against the Auditor Defendants are *only* made with respect to the *misrepresentations in or omissions from*" the DGW audit opinions.[19] And the law is that "where the sole basis for [plaintiffs'] claims is alleged misrepresentations or omissions, plaintiffs have not made out a [scheme liability] claim under Rule 10b-5(a) and (c)." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177-78 (2d Cir. 2005). As to authority, plaintiffs principally rely on *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004), for the proposition that "scheme liability" can be based on misstatements alone. That case has in substance been overruled. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177-78 (2d Cir. 2005).[20]

---

[17] Plaintiffs attempt to distinguish *Nuevo Mundo*, *Asia Pulp & Paper*, and *Star Energy*, but in each the court plainly held, even before *Janus*, that agency could only be established where the facts demonstrated "control" of the particular audit at issue – not merely "control" of the firm conducting the audit. *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *5 (S.D.N.Y. Jan. 22, 2004); *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003); *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919, at *3-4 (S.D.N.Y. Nov. 26, 2008).

[18] Opp. at 16-17 n.19.

[19] Compl. ¶ 173 (emphasis added).

[20] *See also In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 640 (S.D.N.Y. 2008); *TCS Capital Mgmt., LLC v. Apax Partners, L.P.*, No. 06-CV-13447, 2008 WL 650385, at *22 (S.D.N.Y. Mar. 7, 2008). Plaintiffs' other cases lead to no different conclusion. Two of those cases expressly involved "scheme liability" claims exclusively or in addition to misstatement-based claims. *See SEC v. Lee*, 720 F. Supp. 2d 305, 333 (S.D.N.Y. 2010) (scheme liability and misstatement claims); *SEC v. Boock*, No. 09 Civ. 8261, 2011 WL

## B. The Complaint Does Not Allege Scienter As To GTIL.

With respect to scienter, plaintiffs' opposition simply fails to engage. Plaintiffs do not address the absence of allegations here showing fraudulent intent by GTIL rather than Grant Thornton Hong Kong.[21] And plaintiffs do not meaningfully address the clear precedent in our opening brief holding that allegations directed at a subsidiary do not show scienter by a parent (and there is not even a parent-subsidiary relationship here).[22] Plaintiffs argue in a footnote that those cases "have nothing to do" with this one because the complaint alleges agency between GTIL and Grant Thornton Hong Kong.[23] But in each the subsidiary was acting for the benefit of its parent just as Grant Thornton Hong Kong is alleged to have been acting for GTIL here.[24] *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 265-66 (2d Cir. 1996) (subsidiary's alleged fraud "masked substantial trading losses" by the parent); *Glickman v. Alexander & Alexander Servs., Inc.*, No. 93 Civ. 7594, 1996 WL 88570, at *2 (S.D.N.Y. Feb. 29, 1996) (subsidiary's fraud "falsely inflated" parent's earnings and revenues); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 343 (W.D.N.Y. 2008) (subsidiary's fraud contributed to

---

5417106, at *2 (S.D.N.Y. Nov. 9, 2011) (scheme liability). And to the extent the remaining case – the Northern District of Ohio's decision in *Hawaii Ironworkers Annuity Trust Fund v. Cole*, No. 3:10 CV 371, 2011 WL 3862206 (N.D. Ohio Sept. 1, 2011) – can be interpreted to hold that "scheme liability" can be premised on misstatement-based claims, it is contrary to the Second Circuit's clear holding in *Lentell*.

[21] *See* Opening Br. at 12-13.

[22] Opening Br. at 13.

[23] Opp. at 16 n.18.

[24] Plaintiffs' cases say nothing different. The main case, *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005), does not hold that unsupported allegations of agency suffice to impute to an accounting umbrella organization the alleged scienter of a member firm. That case involved specific facts showing agency not alleged here. As to the Deloitte entities, the allegations included that a member firm "sought direction and help" from the Deloitte umbrella organization. *Id.* at 294. As to the Grant Thornton entities, there were "specific instances in which [the Grant Thornton umbrella organization] acted in a manner consistent with an agency relationship," among them that the umbrella organization "disciplined [GT-Italy and some of its] individual partners" in the context of the Parmalat audit. *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 300-301 (S.D.N.Y. 2005); *id.* at 293-96 (S.D.N.Y. 2005). The other cases did not involve the question of whether scienter can be pled against one entity based on the acts of another. *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 511 (S.D.N.Y. 2011); *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 532 (S.D.N.Y. 2010).

"favorable sales" of stock by the parent); *see also Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007).

## II. THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM AGAINST GTIL.

Plaintiffs' section 11 arguments are no better. Plaintiffs argue that GTIL "is potentially liable" as an accountant that "certified" DGW's financial statements and as a "person whose profession gives authority to a statement made by him," again based solely on the fact that the DGW audit opinions were signed "Grant Thornton."[25] But GTIL did not "certify" any DGW financial statements and is not an accountant – which means that it cannot face accountant liability under section 11. *See Adair v. Kaye Kotts Assocs., Inc.*, No. 97 CIV. 3375, 1998 WL 142353, at *4 (S.D.N.Y. Mar. 27, 1998); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865, 2004 WL 1305845, at *12 (S.D.N.Y. May 18, 2004) (Report and Recommendation).[26] And plaintiffs do not explain how GTIL could otherwise be liable as a "person whose profession gives authority to a statement made by him."

Plaintiffs' remaining argument that GTIL can be liable because Grant Thornton Hong Kong was its agent fails too. Liability cannot be expanded beyond the list contained in section 11, whether based on agency or otherwise. *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 180-181 (2d Cir. 2011); *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8628, 2008 WL 3843343, at *3 (S.D.N.Y. Aug. 14, 2008). The only case cited by plaintiffs is not to the

---

[25] Opp. at 11.

[26] Plaintiffs fail in their effort to distinguish *In re Elan Corp. Sec. Litig.* and *Adair v. Kaye Kotts Assocs., Inc.* Both state clearly that accountant liability under section 11 extends only to accountants that "prepare" or "certify" misleading registration statements. *See Adair v. Kaye Kotts Assocs., Inc.*, No. 97 CIV. 3375, 1998 WL 142353, at *4 (S.D.N.Y. Mar. 27, 1998) ("to state a claim against an accountant under this provision, the accountant must have prepared or certified a statement in connection with a registration statement that was false or misleading"); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865, 2004 WL 1305845, at *12 (S.D.N.Y. May 18, 2004) (Report and Recommendation) ("because [defendant accounting firm's] name is not mentioned in the . . . Registration Statement, or any of the documents incorporated by reference, the Plaintiffs' Section 11 claim against that firm must be dismissed with prejudice").

contrary; in fact, it did not even involve a section 11 claim. *See In re Parmalat Sec. Litig.*, 377 F. Supp. 2d 390, 395 (S.D.N.Y. 2005).[27]

## CONCLUSION

Defendant GTIL respectfully requests that the complaint be dismissed with prejudice to the extent directed against it.[28]

Dated: March 15, 2012

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: _____
Michael R. Young
myoung@willkie.com
Antonio Yanez, Jr.
ayanez@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 (telephone)
(212) 728-8111 (facsimile)

*Attorneys for Defendant
Grant Thornton International Ltd*

7483061.14

---

[27] In addition to the arguments in GTIL's motion to dismiss papers, the complaint should also be dismissed for the reasons set forth in the other defendants' papers.

[28] As set forth in our opening brief, the "corrected" amended complaint is the third complaint filed by plaintiffs and should be dismissed with prejudice. There is no reason to believe that plaintiffs could do better if given a fourth try. (*See* Opening Br. at 15 n.22.)